**Sharay–Drenaena BURNETT,**
**Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

No. 99–53.

Supreme Court of Wyoming.

Feb. 24, 2000.

Rehearing Denied March 28, 2000.

Representing Appellant: Tina N. Hughes, Cheyenne, Wyoming.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kimberly A. Baker, Senior Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

MACY, Justice.

Appellant Sharay–Drenaena Burnett appeals from the judgment and sentence which was entered after a jury found her guilty of aiding and abetting first-degree murder.

We affirm.

## ISSUES

Burnett presents this statement of the issues:

1. Did Appellant receive ineffective assistance of counsel in that (a) counsel failed to obtain a ruling on his Motion to Suppress the statement of Appellant; (b) counsel failed to object to testimony regarding alleged "wiccan" activities of Appellant and Appellant having played Dungeons and Dragons in the past; (c) counsel failed to object to unsubstantiated closing argument regarding "Satanic" forces; and (d) counsel failed to use the previously admitted transcribed statement of Appellant and the favorable evidence therein, to refresh Appellant's recollection and assist her in presenting her legitimate defenses to the jury, as well as failing to utilize said statement in closing argument?

2. Did plain error occur when the trial court allowed admission of the testimony concerning Appellant's alleged "wiccan" activities and the State's argument concerning "Satanic" forces?

## FACTS

In September 1997, Burnett and the victim moved in together and planned to be married. On October 8, 1997, Burnett's friend called her on the telephone. Sometime during their conversation, her friend had to use the restroom. He gave the telephone to Michael Sanders, and Sanders and Burnett conversed for several hours. Two evenings later, Sanders visited Burnett and the victim at their home. Sanders and the victim drank beer while Burnett cleaned another part of the home. The victim became intoxicated and despondent, and he told Sanders and Burnett he wanted to die. Sanders, obliging and resourceful, fashioned a weapon from a disposable razor, a plastic spoon, and a piece of electrical tape. Burnett filled the bathtub with water, kissed the victim goodbye, and went into the bedroom to chant and meditate. The victim got into the bathtub.

Within a few minutes, Burnett heard the victim scream repeatedly, "Please, I changed my mind. I don't want to do this. I changed my mind." When she went to the bathroom to investigate, she saw the victim was injured but still alive. Sanders told Burnett he needed a sharper knife and specifically asked for a steak knife, which Burnett obtained for him from her kitchen. Burnett returned to the bedroom, where she heard the victim continue to plead with Sanders. She returned to the bathroom in time to see Sanders stab the victim in the neck with the steak knife. Burnett lit a cigarette for Sanders, and then she sat by the door while Sanders stabbed the victim several more times.

Burnett and Sanders agreed that, if anyone inquired about the victim, they would say he went to get beer and marijuana but never returned. They walked to a liquor store to purchase beer and snacks, and then they returned to the house where they talked until about five o'clock in the morning. Later that morning, Sanders told a co-worker about the killing, showed him the victim's body, and asked for help in disposing of it. The co-worker called the police, and the police proceeded to the house where they found Burnett and the body. After the police informed Burnett of her rights, she gave a detailed rendition of the previous night's events.

At her arraignment on November 10, 1997, Burnett pleaded not guilty. Her counsel subsequently sought to have the statement she had given to the police suppressed and asked that she be given a psychological evaluation. A hearing was scheduled on the suppression motion but was continued, at the defense counsel's request, pending the results of the psychological evaluation. The motion was apparently abandoned; the defense counsel did not attempt to reschedule a hearing after the continuance. Burnett's jury trial began on September 29, 1998. She testified that she could not recall the events surrounding the victim's death or her statement to the police. The jury found her

guilty of aiding and abetting first-degree murder, and she was sentenced to a life term of imprisonment. She filed this timely appeal.

## DISCUSSION

### A. Ineffective Assistance of Counsel

 Burnett claims that her trial counsel was ineffective because he did not obtain a ruling on her motion to suppress evidence, did not object to the testimony about her alleged wiccan activities and role-playing games, did not object to the prosecutor's mention in closing argument of "satanic" forces, and did not use her statement to the police to aid in her defense. We review claims of ineffective assistance of counsel under the following standard:

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."

*Mapp v. State,* 953 P.2d 140, 143 (Wyo.1998) (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Furthermore, we invoke a strong presumption that the counsel rendered adequate and reasonable assistance, making all decisions within the bounds of reasonable professional judgment. *Jackson v. State,* 902 P.2d 1292, 1295 (Wyo.1995).

 In her first assertion of ineffective assistance of counsel, Burnett scores her trial counsel for failing to obtain a ruling on her motion to suppress the statement she gave to the police. In the initial motion, she argued that her statement should be suppressed be-

cause her mental capacity was diminished and she had not taken her prescribed medication for a psychological condition. In her appellate brief, Burnett contends that the statement should have been suppressed because she had gotten very little sleep the night before she gave the statement, she had difficulty standing up to men, and she was wearing her nightgown when she was taken to the police station and interviewed.

We have held that a defense counsel is not ineffective simply because he does not pursue a suppression motion which cannot succeed. *Beadles v. State,* 984 P.2d 1083, 1086 (Wyo. 1999); *Bloomquist v. State,* 914 P.2d 812, 821 (Wyo.1996). The record shows Burnett was informed of, understood, and voluntarily waived her constitutional right to remain silent. Even if we were to assume, *arguendo,* that Burnett's claims regarding the circumstances of her statement were entirely true, there still was no basis for the suppression of her statement. " 'Involuntariness requires coercive state action, such as trickery, psychological pressure, or mistreatment.' " *State v. Evans,* 944 P.2d 1120, 1125 (Wyo. 1997) (quoting *Withrow v. Williams,* 507 U.S. 680, 708, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993) (O'Connor, J., concurring)). Absent such coercive state action, we will not determine that a statement is involuntary. *See People v. Valdez,* 969 P.2d 208, 213 (Colo. 1998) ("Absent evidence that the officers deprived Valdez of food and rest as a means of physical punishment, the fact that Valdez happened to be hungry and tired does not support a conclusion that his statements were involuntary").

 Burnett next asserts that her trial counsel was ineffective because he did not object to testimony about her alleged wiccan[1] activities and role-playing games and did not object to the prosecutor's statement in closing argument that "some type of strange satanic force took over and caused the death of [the victim]." The state responds that the defense counsel exercised a sound trial strategy by declining to object because doing so would have drawn more

---

1. Wicca is defined as: "the practice or cult of witchcraft." Clarence L. Barnhart et al., The

Second Barnhart Dictionary of New English 504 (1980).

attention to the material. In addition, the state points out that the defense counsel elicited testimony from Burnett which showed her interest in role-playing and the occult was harmless and unrelated to the crime charged. Given that likely explanation, Burnett cannot overcome our presumption that her counsel was effective. The ultimate failure of a legitimate trial tactic or strategy does not preclude a holding that the counsel rendered effective assistance. *Hornecker v. State,* 977 P.2d 1289, 1292 (Wyo. 1999); *Owen v. State,* 902 P.2d 190, 199 (Wyo.1995).

■ In her final claim of ineffective assistance, Burnett insists that her trial counsel failed to use her statement to the police to refresh her recollection and to otherwise aid in her defense. Burnett testified on cross-examination that she had a copy of her statement "for a long time," she read it four times, and it did not refresh her memory. It is not credible, therefore, to determine that her defense counsel could have refreshed her memory by using the statement at trial when multiple readings over a period of time failed to do so. We hold that Burnett was not prejudiced. She also complains that her counsel should have used her statement to bolster her claim that she cooperated with Sanders because she was afraid of him. Although the word does not actually appear in her brief, this theory smacks of a duress defense, which is simply not a valid defense to a murder charge. *Amin v. State,* 811 P.2d 255, 260 (Wyo.1991). Burnett also contends that, in his closing argument, her counsel should have pointed out individual favorable portions of her statement. Instead of doing so, her counsel urged the jury to "read the whole thing" in order to "know what was going on." That tactic, although unsuccessful, was legitimate and, therefore, did not constitute ineffective assistance. ·

## B. Admission of Testimony

Burnett claims that the trial court erred in admitting testimony about her wiccan activities and role-playing games and in allowing the prosecutor's statements in *voir dire* about witchcraft and in the closing argument about "satanic" forces. The state argues that the mention of witchcraft in *voir dire* was necessary to determine whether prospective jurors would be unfairly influenced by the expected testimony about Burnett's wiccan practices and the mention of "satanic" forces in the closing argument was a permissible comment on the evidence.

■ Because Burnett's counsel did not object at trial, we will employ our plain error standard of review:

A three-part test has been established for determining whether an error may achieve the status of plain error. First, the record must be clear as to the incident which is alleged as error. Second, the party claiming that the error amounted to plain error must demonstrate that a clear and unequivocal rule of law was violated. Finally, that party must prove that a substantial right has been denied him and as a result he has been materially prejudiced.

*Bradley v. State,* 635 P.2d 1161, 1164 (Wyo. 1981); *see also Rivera v. State,* 987 P.2d 678, 680–81 (Wyo.1999). The first element has been clearly satisfied; the complained of statements and testimony are reflected in the record. Burnett claims the testimony about her wiccan practices violated the rule against irrelevant evidence. The state responds that the challenged testimony was relevant to show Burnett and Sanders shared similar interests and beliefs but had to eliminate the victim before they could pursue a romantic relationship. We agree. The state presented that theory at trial, and the testimony complained of was relevant to it. Burnett next claims that the testimony violated the rule against improper character evidence. Because she does not offer authority or cogent argument to support that bare assertion, we will not consider it further. *Hamburg v. Heilbrun,* 891 P.2d 85, 87 (Wyo.1995). Similarly, she does not point us to a rule of law which was violated by the prosecutor's *voir dire* or closing argument. We, therefore, do not need to address those points either.

Affirmed.