**James Edward PEARSON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 99–280.

Supreme Court of Wyoming.

Oct. 23, 2000.

Rehearing Denied Nov. 21, 2000.

Representing Appellant: Michael D. Zwickl of Beech Street Law Office, Casper, Wyoming.

Representing Appellee: Gay Woodhouse, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kimberly A. Baker, Senior Assistant Attorney General, Cheyenne, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY,* GOLDEN, and HILL, JJ.

THOMAS, Justice.

James Edward Pearson's (Pearson) major contention is that he was entitled to have his proffered jury instruction on a lesser-included offense given to the jury, and the trial court erred in failing to give it. Pearson was convicted of one count of delivery of a controlled substance in violation of Wyo.Stat. Ann § 35–7–1031(a) (Lexis 1999).[1] The instruction that Pearson requested, and which the trial court refused to give, was an instruction on the lesser-included offense of possession of a controlled substance. Pearson also asserts additional issues regarding the admission of testimony about prior uncharged offenses, ineffective assistance of counsel, and cumulative error. The record, as compared to the applicable rules of law, supports none of Pearson's claims of error. The Judgment and Sentence entered in the trial court is affirmed.

This statement of the issues is found in Pearson's brief:

ISSUE I

Did the trial court deny the Appellant his constitutional right to a fair trial when it

---

* Retired June 2, 2000.

1. Wyo.Stat.Ann § 35–7–1031(a) provides:

(a) Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this subsection with respect to:

(i) Methamphetamine or a controlled substance classified in Schedule I or II which is a narcotic drug, is guilty of a crime and upon conviction may be imprisoned for not more than twenty (20) years, or fined not more than twenty-five thousand dollars ($25,000.00), or both;

(ii) Any other controlled substance classified in Schedule I, II or III, is guilty of a crime and upon conviction may be imprisoned for not more than ten (10) years, fined not more than ten thousand dollars ($10,000.00), or both;

(iii) A substance classified in Schedule IV, is guilty of a crime and upon conviction may be imprisoned for not more than two (2) years, fined not more than two thousand five hundred dollars ($2,500.00), or both;

(iv) A substance classified in Schedule V, is guilty of a crime and upon conviction may be imprisoned for not more than one (1) year, fined not more than one thousand dollars ($1,000.00), or both.

refused to give Appellant's lesser-included instruction on possession of a controlled substance?

ISSUE II

Did the trial court err when it admitted 404(b) evidence without first determining its admissibility prior to trial?

ISSUE III

Should the Appellant's conviction be overturned pursuant to the doctrine of cumulative error?

ISSUE IV

Was Appellant's counsel ineffective?

The State presents this statement of the issues:

I. Whether the trial court properly refused to instruct the jury on possession of a controlled substance?

II. Whether Appellant was convicted based upon improper character evidence?

III. Whether Appellant received effective assistance of counsel?

IV. Whether cumulative error deprived Appellant of a fair trial?

On September 1, 1998, agents of the Wyoming Division of Criminal Investigation (DCI) initiated a controlled purchase of methamphetamine from Pearson. For this purpose, they invoked the services of a confidential informant, who had been arrested and had entered a plea of guilty to possession of methamphetamine. The informant was cooperating with the DCI agents as part of a bargain for reduction of the charges against her. The DCI agents met with the informant at her residence, and they drove her to the DCI office, where she was searched, fitted with a microphone, and given five pre-recorded twenty dollar bills. One of the DCI agents then took the informant by automobile to Pearson's neighborhood, and dropped her off near Pearson's home.

Pearson admitted the informant when she knocked on his door, and she told him she was "just looking for something." She asked if he had anything, meaning methamphetamine, and Pearson responded by an inquiry as to whether she had seen any of the "pink stuff." After a brief discussion, the infor-

mant asked if he would let her try some of that, but he stated he did not have any more. Pearson then told the informant he had some other methamphetamine. Following some other brief dialogue, the informant prepared to leave, but Pearson asked her to "hang out" and visit with him for a few minutes. Pearson then went into his bedroom, and returned with some methamphetamine, which he poured into a plastic bag. He rolled up the bag, and handed it to the informant who asked how much she owed him, and Pearson indicated forty dollars. The informant then gave him two of the marked twenty dollar bills and left the house.

The informant then turned over to the DCI agents the drugs, which she had purchased. When Pearson was arrested, the two pre-recorded twenty dollar bills were found in his wallet. Pearson protested his innocence to the DCI agents, but to no avail.

Pearson then was charged with one count of delivery of a controlled substance, methamphetamine, in violation of Wyo.Stat.Ann § 35-7-1031(a), and his case went to trial on April 19, 1999. Witnesses for the prosecution included the confidential informant and the two DCI agents. The jury found Pearson guilty, and he was then sentenced by the trial court to imprisonment in the Wyoming State Penitentiary for a term of not less than six years and no more than ten years. Pearson has appealed the Judgment and Sentence to this Court.

Pearson's first issue sets forth his contention that error was committed by the trial court when his proffered instruction to the jury on the lesser included offense of possession of a controlled substance was not given. It is essential to the preservation for appeal of the refusal of a proposed instruction on a lesser included offense that the party present the instruction "in writing with appropriate argument to inform the trial court of the nature and grounds for the instruction on the lesser included offense." *State v. Keffer*, 860 P.2d 1118, 1137 (Wyo. 1993). Pearson clearly complied with this requirement, and the State does not argue otherwise.

When a proposed instruction on a lesser included offense is refused, we have advised:

The trial judge must first determine if all the elements of the lesser offense are found within the greater; and, if so, is there some evidence that would rationally permit the jury to find the accused guilty of the lesser and not guilty of the greater offense. If such evidence is present, the instruction should be given.

*Keffer*, 860 P.2d at 1140 (Cardine, J., concurring). *See also Paramo v. State*, 896 P.2d 1342, 1344 (Wyo.1995) ("[a] district court's failure to give a lesser included offense instruction when such an offense indeed exists, and the evidence presented would support conviction upon that offense, constitutes reversible error. *Eatherton v. State*, 761 P.2d 91, 95 (Wyo.1988).").

The State also agrees with Pearson that the elements of possession of a controlled substance are found within the offense of delivery of a controlled substance. We have articulated that proposition in *Nava v. State*, 904 P.2d 364, 367 (Wyo.1995). The elements aspect of the *Keffer* test is satisfied in this instance.

The focal point of Pearson's appeal then becomes the presence of evidence to satisfy the second part of the *Keffer* test. We have scrutinized the record for evidence that rationally would support a conclusion that Pearson was guilty of possession, but not guilty of delivery. Pearson's argument is that the jury reasonably could have determined that he possessed, but did not sell, methamphetamine. The theory he presents here is that the methamphetamine that was found upon search of his home was only for his personal use, and he did not sell any methamphetamine to the informant. He contends that the informant must have secreted some methamphetamine on her person, or at some location near his home, and that is what she turned over to the DCI agents, claiming that she had purchased it from him. His explanation of the two prerecorded twenty-dollar bills the informant gave him is that this was payment for a preexisting debt.

It is clear that the second aspect of the *Keffer* test depends upon evidence and not the defendant's theory or speculation about what might have happened. The evidence in this case does not reasonably support any conclusion that Pearson was guilty of possession, but was not guilty of delivery. The record discloses that the informant had only about one hour between the time the DCI agent called her to arrange the controlled drug purchase and the time that he arrived at her home. Before going to Pearson's residence, she was searched by a nurse with twenty-two years of law enforcement experience. The nurse testified that she was satisfied the informant had no controlled substances on her person.

After the purchase, the informant described to the DCI agents the pink plastic bag in which the drugs were found in Pearson's bedroom. If Pearson had possessed the methamphetamine only for his personal use, the informant would not have had any opportunity to see it, because Pearson's own statement to the officers was that she never entered the bedroom. Further, Pearson's trial theory that the informant planted the drugs in his bedroom because she was seeking revenge, if accepted, would result in his acquittal of both possession and delivery. We are satisfied there is no evidence in this record that would serve to support the instruction on the lesser included offense of possession. The trial court did not err in denying the requested instruction.

█ Pearson then attacks his conviction arguing that the trial court admitted what Pearson characterizes as W.R.E. 404(b)[2] character evidence. Pearson asserts that three prosecution witnesses testified that prior to the charged offense, he had sold methamphetamine to the informant. The three witnesses about whom Pearson complains were the informant and the two DCI agents. The testimony of the informant that Pearson relies upon consists of two colloquies occur-

---

2. W.R.E. 404(b) reads:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admis-sible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

ring on direct examination. The first exchange of questions and answers is:

Q Okay. Have you ever bought methamphetamine from the defendant, James Pearson?

A Yes.

Q Okay. Prior to September 1st, of 1998, had you bought methamphetamine from James Pearson?

A Yes.

The second exchange upon which Pearson relies reflects the following:

Q Okay. And you indicated previously that you had purchased methamphetamine from [Pearson]?

A Yes.

Q Previous to September 1st of 1998?

A Yes.

Q Can you indicate with any degree of specifics when that was?

A March of 1998, January of '98.

Q So several months before the September 1st date?

A Yes.

Later in the record, the following question and answer was furnished during the direct examination of one of the DCI agents. He was being questioned about surveillance tactics, and the record demonstrates:

Q So you are listening to the conversation while you are trying to surveil them, correct?

A Correct. But, you know, also with Mr. Pearson's case—who I was aware of previously and who's had dealings with the DCI in the past—and he is street-wise so to speak—

[DEFENSE COUNSEL]: Your Honor, I am going to object. He answered the last question as being correct, and then he goes off on this—

THE COURT: Sustained.

The last testimony that Pearson challenges in connection with this issue was from the direct examination of the other DCI agent, and the record demonstrates:

Q Did you also receive information from [the informant] on August 14th or August 12th?

A August 12th.

Q And was that information in regard to what she knew about James Pearson?

A Yes, sir.

Q What kind of information did she provide you?

A She told me that she had purchased methamphetamine from him—from Mr. Pearson—in the past. I believe she mentioned—I think January and March of '98 she had purchased controlled substances from him. And she stated she usually tried to get a teener, which is a 16th of an ounce of methamphetamine. But she had gotten less, I think, a half gram to a gram sometimes.

Q Okay. And so she indicated roughly when the last purchase was with him?

A Yeah, I believe it was March, and then she mentioned something about how he had been kind of laying low or taking a break from it. The impression I got was that that was because of police pressure. But I can't confirm that. But that she had heard that, and I am not sure how.

[DEFENSE COUNSEL]: Your Honor, this sounds like hearsay.

THE COURT: Sustained.

[PROSECUTOR]: I think we've accomplished what we wanted in regard to the answer.

■ There was no objection to the challenged testimony on grounds that it violated W.R.E. 404(b), and we must limit our review to the question of the existence of plain error. Our standard for examining claims of plain error is:

"First, the record must be clear as to the incident which is alleged error. Second, the party claiming that the error amounted to plain error must demonstrate that a clear and unequivocal rule of law was violated. Finally, the party must prove that a substantial right has been denied him and as a result he has been materially prejudiced."

*Emerson v. State*, 988 P.2d 518, 520–21 (Wyo. 1999) (*quoting Dudley v. State*, 951 P.2d 1176, 1179 (Wyo.1998)). These requirements are of long standing in our jurisprudence.

*Hampton v. State,* 558 P.2d 504, 507 (Wyo. 1977).

The first requirement for plain error review is satisfied because the testimony about which complaint is made was preserved in the trial transcript. The next requirement is to demonstrate the violation of a clear and unequivocal rule of law. Pearson argues that the State violated the prohibition found in W.R.E. 404(b) against character evidence because it offered the challenged testimony to show that he had the propensity to commit the crime. The State's argument on this aspect of plain error is that the testimony was helpful in explaining to the jury how Pearson was selected as a target for an attempted drug purchase, and therefore the testimony is admissible under W.R.E. 404(b).

The facts in this case parallel those in *Solis v. State,* 981 P.2d 28 (Wyo.1999). In *Solis,* we held that evidence of prior drug deliveries could be received to demonstrate the motivation for targeting a particular defendant and also to discredit the defendant's theory of the case. *Id.* at 31–32. In presenting her opening statement to the jury, trial counsel for Pearson injected a theory that Pearson was targeted for the controlled buy by the informant who was seeking revenge. Given this theory advanced by Pearson, the testimony that he challenges was properly admitted, and there was no violation of W.R.E. 404(b). Pearson's failure to demonstrate a violation of a clear and unequivocal rule of law ends the search for plain error.

■ In his fourth issue, Pearson contends that he did not receive the effective assistance of counsel to which he is constitutionally entitled because the trial counsel failed to object to the testimony about prior drug transactions and did not attempt to suppress an audio recording made of the conversation between Pearson and the informant. We have been consistent in our application of the standard pursuant to which we review ineffective assistance of counsel claims:

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."

*Mapp v. State,* 953. P.2d 140, 143 (Wyo.1998) (*quoting Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). *See also State ex rel. Hopkinson v. District Court, Teton County,* 696 P.2d 54, 66–67 (Wyo.), *cert. denied,* 474 U.S. 865, 106 S.Ct. 187, 88 L.Ed.2d 155 (1985). In pursuing such a claim, we invoke a "strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Jackson v. State,* 902 P.2d 1292, 1295 (Wyo.1995).

In recent cases, we have held that the ineffectiveness of a defendant's trial counsel is not demonstrated by failing to pursue a suppression motion that cannot succeed. *Burnett v. State,* 997 P.2d 1023, 1026 (Wyo. 2000); *Beadles v. State,* 984 P.2d 1083, 1086 (Wyo.1999). That principle is transferable to trial objections that have no prospect of success. What we said above with respect to the challenge presented under W.R.E. 404(b) to the uncharged drug deliveries demonstrates that the evidence was admissible. Any objection based upon that rule would have been fruitless, and it follows that trial counsel for Pearson was not ineffective because she failed to raise a futile objection.

The contention of ineffectiveness for failing to suppress the audio tape is equally unpersuasive. The audible portions of the tape included Pearson's statements to the informant that could support his claim of innocence. Early in the recording, the informant is heard to say, "So you don't have anything either?" Later in the same recording, Pearson says, "Ain't selling no dope." In his appellate brief to this Court, Pearson contends "[t]he tape, in and of itself, would indicate that the Defendant *did not* sell the drug he was ultimately convicted of selling." (Emphasis in original.) Because the tape

encompasses material helpful in presenting Pearson's defense, allowing it to be admitted into evidence without contest was a legitimate trial tactic, and the ultimate failure of that tactic to secure an acquittal does not demand that we conclude that counsel was ineffective. *Burnett,* 997 P.2d at 1027; *Hornecker v. State,* 977 P.2d 1289, 1292 (Wyo. 1999).

In the third issue that he argues, Pearson asserts the claim of cumulative error. His argument is that even if his jury instruction, evidentiary, and ineffective assistance claims do not require reversal when considered individually, their combined effect does. The State's argument, which our precedent supports, is that since there was no error with respect to any of Pearson's contentions, this Court has no premise to consider cumulative error. *Johnson v. State,* 936 P.2d 458, 468 (Wyo.1997) ("[w]hen no error has occurred, we cannot recognize a claim of cumulative error."); *Engberg v. Meyer,* 820 P.2d 70, 84 (Wyo.1991).

None of the claims asserted on Pearson's behalf have any substance in light of the record and the law. The Judgment and Sentence entered in the trial court is affirmed in all respects.