**Robert C. SHEELEY, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 98–49.

Supreme Court of Wyoming.

Nov. 18, 1999.

Representing Appellee: Gay V. Woodhouse, Chief Deputy Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Theodore E. Lauer, Director, and Kenna J. Fisher, Student Intern, of the Prosecution Assistance Program. Argument by Ms. Fisher.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and HILL, JJ.

GOLDEN, Justice.

This is an appeal from the judgment and sentence entered November 12, 1997, convicting Appellant Robert C. Sheeley (Sheeley) of three counts of immodest, immoral or indecent liberties with a child, in violation of Wyo. Stat. Ann. § 14–3–105. Sheeley's con-

viction stems from sexual contact with his minor stepdaughter.

Sheeley presents three claims of error. First, he contends he did not receive a fair trial because the trial court denied his motion to excuse a juror for cause after the juror explained he may not be impartial because his daughter was a molestation victim. Second, he maintains that it was plain error for the prosecutor to elicit improper testimony from a witness. And third, he claims the trial court abused its discretion when it failed to perform, *sua sponte,* an *in camera* inspection of the entire Department of Family Services (DFS) file which tracked allegations of sexual abuse of the victim by Sheeley since 1993.

We must agree that the prosecutor elicited improper and prejudicial testimony from a witness. Admission of the testimony was error per se because it denied Sheeley his right to a trial by jury. Therefore, the judgment and sentence are reversed.

## ISSUES

Appellant Sheeley presents these issues for our review:

I. Whether the trial court denied the Appellant his constitutional right to a fair and impartial jury when it abused its discretion during the jury selection process by requiring the Appellant to use a peremptory challenge on a biased jury member?

II. Whether Appellant was denied a fair trial when the State elicited a witness statement regarding the judge's belief the alleged victim was perjuring herself during the preliminary hearing?

III. Whether the district court abused its discretion by denying Appellant access to the reports of the Department of Family Services without first completing an in camera review to determine whether the reports contained statements discoverable under Rule 26.2, Wyo. R.Crim. P.?

The State responds with these issues:

I. Did the district court abuse its discretion in denying Appellant's challenge for cause to prospective juror [Juror]?

II. Did plain error occur when a defense witness testified on cross-examination that,

at a preliminary examination, the court cautioned the child victim regarding perjury?

III. Did the district court abuse its discretion when it denied Appellant's demand for disclosure of the Department of Family Services' case file, without first conducting an in camera examination of the file to determine whether it contained statements required to be disclosed by Rule 26.2, W.R. Cr. P.?

## FACTS

MM, the victim in this matter, was born on January 7, 1980. In March of 1993, police received a citizen's report that MM was being molested by her stepfather, Robert Sheeley. A police officer and a DFS worker interviewed the victim at that time. She related two incidents of inappropriate touching and two incidents of intercourse which occurred in February and March of 1993. The victim later recanted her allegations, saying it never happened and she made the allegations because she was angry at Sheeley. DFS did not take any further action because it lacked corroborative evidence of the crime. From March of 1995 until June of 1996, the victim and her family, including Sheeley, lived in Oregon. In May of 1996, the victim gave birth to a child, SHS.

On January 12, 1997, a DFS worker received a report that Sheeley, who had returned with his family, including the victim, to Wyoming, pulled the victim's hair. During questioning at the Criminal Justice Center, the victim also alleged that Sheeley was the father of her child. The worker asked the victim if she wanted to fill out a statement-of-absent-parent form which is required for anyone seeking public assistance. On the form the victim stated that Sheeley was the father of the child and that the child was conceived as a result of incest or forcible rape. DFS referred the case to Child Support Enforcement to establish paternity and collect child support. Subsequent DNA testing showed a 99.82% probability that Sheeley was the father of SHS. Child Support Enforcement notified DFS and the county attorney's office of the test results.

DFS and law enforcement personnel interviewed the victim again on May 22, 1997. The next day, the law enforcement officer stated in a sworn affidavit that the victim admitted to having sexual intercourse with Sheeley on a regular basis from 1993 through March 1, 1995. On June 25, 1997, the county attorney's office filed an information charging Sheeley with three counts of indecent liberties, in violation of Wyo. Stat. Ann. § 14–3–105. Count One was for acts committed on or between October 1, 1993, and December 31, 1993. Count Two was for acts committed on or between January 1, 1994, and December 31, 1994. The third count was for acts committed on or between January 1, 1995, and March 1, 1995.

After a two day trial, the jury returned a guilty verdict. Sheeley was sentenced on November 10, 1997, to three concurrent terms of two to three years, to run concurrently with another sentence of seven to eight years for taking indecent liberties with the victim in 1997.[1] Sheeley filed a timely appeal with this Court.

## DISCUSSION

*Judge's Statement*

At the preliminary hearing for another case against Sheeley,[2] the victim testified she did not have sexual contact with Sheeley in Wyoming. At trial the victim testified she did have sexual contact with Sheeley in Wyoming, but then appeared to recant that testimony. On direct examination, the defense investigator testified that the victim told him she did not have sex with Sheeley in Wyoming. During cross-examination, the prosecutor questioned the investigator about the victim's testimony at the preliminary hearing as follows:

> [Prosecutor] Q: You were present for that. Then she testified in court apparently much the way that she talked to you, did

she not, that it had happened once in Oregon and whatever?

> A: Yes.

> Q: And do you recall what **the court, the judge said** with regard to that testimony? [emphasis added]

> A. I think he cautioned her in regard to perjury.

 Sheeley did not object to this testimony and presents the issue to this court in terms of plain error. However, we are inclined to perform an error per se analysis because the prosecutor asked the witness to repeat a judge's admonition from another proceeding. We can not fathom a time nor a place where such a question would properly be presented to a witness. First, it improperly interjected judicial bias into the proceedings; and second, it required an answer that seemed to address the judge's opinion of the credibility of the victim.

We have held that " 'testimony offering an opinion as to the guilt of the defendant, when elicited by a prosecuting attorney, should be perceived as error per se.' " *Dudley v. State,* 951 P.2d 1176, 1178 (Wyo.1998) (quoting *Stephens v. State,* 774 P.2d 60, 68 (Wyo.1989)). We considered a similar dilemma in *Stephens:*

> We are sensitive to the proposition that judicial restraint generally demands that we address only those issues properly before us and preserved for our review. We also know that it is within our jurisdiction to decide any case as justice may demand. In addition, recent experience with post-conviction remedies teaches us that the failure of counsel to raise issues which implicate constitutional rights of a defendant in an appeal will result in those issues being presented in a subsequent proceeding under a claim of ineffective assistance of counsel. Consequently, judicial efficiency strongly suggests the treatment of obvious matters in the first appeal. We also have in mind the pertinency to the State of

---

1. During sentencing for the crimes subject to this appeal, the judge also sentenced Sheeley to a term in the penitentiary of not less than seven nor more than eight years to run concurrently with the sentence in this case. Apparently in exchange for concurrent sentencing, Sheeley plead guilty to a separate charge of immoral or

indecent liberties for an incident that took place between Sheeley and the victim on August 9, 1997.

2. It appears the preliminary hearing at issue was held on September 15, 1997, and involved the above case.

Wyoming of this statement by the Supreme Court of the United States:

"* * * Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: 'The United States wins its point whenever justice is done its citizens in the courts.'"

*Stephens,* 774 P.2d at 63(quoting *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963) (citations omitted)).

In *Dudley,* we discussed the significance of per se error:

The import of proclaiming an event as error per se is articulated in *Stephens* as follows:

Even though error is found, it still is necessary, in most instances, to determine whether the error was prejudicial. Unless the situation reaches the level of error per se, or is perceived to be constitutional error, error is prejudicial only if the defendant can establish a reasonable probability that, in the absence of the error, the verdict might have been more favorable.

*Id.* at 67 (citation omitted). Testimony elicited by a prosecutor which offers an opinion as to the defendant's guilt must be presumed prejudicial rather than treated as a question of plain error because it is impossible to determine whether the jury may have relied on the opinion in reaching its verdict. *Id.* at 68; *Bennett v. State,* 794 P.2d 879, 881 (Wyo.1990); *Whiteplume [v. State],* 841 P.2d [1332] at 1338 [ (Wyo. 1992) ].

*Dudley,* 951 P.2d at 1178. Although the investigator did not give his opinion as to the guilt of the defendant, the prosecutor's question obviously sought to elicit, and did elicit, not only irrelevant evidence, but evidence which infected the proceedings with judicial bias and improper opinion testimony.

The North Carolina Supreme Court has discussed the danger of judicial comments concerning perjury affecting the jury:

Any intimation by the judge in the presence of the jury, however, that a witness had committed perjury would of course, ... constitute reversible error.... Therefore, judicial warnings and admonitions to a witness with reference to perjury are not to be issued lightly or impulsively. Unless given discriminatively and in a careful manner they can upset the delicate balance of the scales which a judge must hold evenhandedly. Potential error is inherent in such warnings, and in a criminal case they create special hazards.

First among these is that the judge will invade the province of the jury, which is to assess the credibility of the witnesses and determine the facts from the evidence adduced.... It is most unlikely that a judge would ever warn a witness of the consequences of perjury unless he had determined in his own mind that the witness had testified falsely.

*State v. Locklear,* 309 N.C. 428, 306 S.E.2d 774, 778 (1983) (quoting *State v. Rhodes,* 290 N.C. 16, 224 S.E.2d 631, 636–38 (1976)).

■ We have often warned that a trial judge must use care not to comment on the evidence. *Harris v. State,* 933 P.2d 1114, 1118 (Wyo.1997) (quoting *Phillips v. State,* 597 P.2d 456, 458 (Wyo.1979)) (quoting *Peterson v. McMicken (Nelson's Estate),* 72 Wyo. 444, 499, 266 P.2d 238, 261 (1954)). In a jury trial the judge must refrain from expressing an opinion on the weight or quality of the evidence. *Harris,* 933 P.2d at 1118. Any expression of opinion on the evidence indicating possible bias on the part of the trial judge is prejudicial, as infringing upon jury's duties. *Id.* This is especially true in criminal cases. *Phillips,* 597 P.2d at 458. Such comments are prejudicial, reversible error. *Id.*

■ The jury was asked to decide which version of the victim's allegations was true. The jury could have drawn the conclusion that the preliminary hearing judge believed the story which would result in the guilt of the defendant over the story which absolved him. That opinion, or the impression of that

opinion, had no place before this jury. "The jury is charged with resolving the factual issues, judging the witnesses' credibility, and ultimately determining whether the accused is guilty or innocent." *Newport v. State*, 983 P.2d 1213, 1215 (Wyo.1999) (citing *Gayler v. State*, 957 P.2d 855, 860 (Wyo.1998); *Zabel v. State*, 765 P.2d 357, 362 (Wyo.1988)). "A witness may not, therefore, vouch for the credibility of another witness or a victim." *Newport*, 983 P.2d at 1215 (citing *Gayler*, 957 P.2d at 860; *Curl v. State*, 898 P.2d 369, 373–74 (Wyo.1995)). The testimony raises concerns about its effect on the jury, "namely, that 'the testimony could have decided the case for the jury.'" *Bennett v. State*, 794 P.2d 879, 882 (Wyo.1990) (quoting *Stephens*, 774 P.2d at 67). "[I]mproper invasion of the jury's function remains critical and any invasion of the jury's role must be treated as error per se." *Id.*

Our analysis does not change because the judge referred to in the testimony was not the trial judge. The testimony did not indicate the identity of the preliminary hearing judge. When it heard the testimony, the jury did not know whether the judge in the preliminary hearing was also the trial judge. The jury may have assumed the preliminary hearing judge was the trial judge, and could logically conclude that the judge did not believe the victim when she denied having sexual relations with Sheeley in Wyoming. To permit the jury to rely on a judge's opinion of guilt " 'would be the ultimate abdication of the function of the jury.'" *Id.* at 881 (quoting *Stephens*, 774 P.2d at 64). Such an implicit delegation of the decision of the jury "surely would deprive a defendant of his constitutional rights to a jury trial." *Stephens*, 774 P.2d at 67 n. 3. Admission of the statement was error per se, and the judgment and sentence must be reversed and this case remanded for a new trial.

Our decision concerning the inadmissible testimony is dispositive. The jury selection issue was unique to a particular juror, and Sheeley did not request an *in camera* inspection of the DFS file at trial. We find it is unlikely the issues will present themselves on remand. Therefore, we decline to address them at this time.

## CONCLUSION

It is error per se for a prosecutor, to elicit testimony concerning a judge's statement in another proceeding. This is especially true when the statement may be understood to implicate the judge's opinion on the credibility of a trial witness. Sheeley was denied his right to a trial by jury when the prosecutor elicited such testimony. Therefore, we reverse and remand for a new trial.