2001 WY 11

**Martin G. SHIPMAN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 99–151.**

Supreme Court of Wyoming.

Feb. 2, 2001.

Representing Appellant: Frank R. Chapman and Les Bowron of Beech Street Law Office, Casper, WY.

Representing Appellee: Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Sen-

ior Assistant Attorney General; and T. Alan Elrod, Assistant Attorney General.

Before LEHMAN, C.J., THOMAS, GOLDEN and KITE, JJ.; and SPANGLER, District Judge (Retired).

SPANGLER, District Judge (Retired).

[¶ 1] Appellant Martin G. Shipman was convicted of first-degree murder after pleading not guilty by reason of mental illness or deficiency. He now challenges that jury verdict. We affirm the verdict and life sentence.

## ISSUES

[¶ 2] Appellant presents these issues for our review:

    1. Was the Defendant denied the effective assistance of counsel in violation of his Sixth Amendment rights under the Constitution of the United States and the Constitution of the State of Wyoming?

    2. Did the District Court commit reversible error in appointing and allowing Paul C. Jennings, Ph.D. to testify as the State's designated examiner under W.S. § 7–11–301, et[ ] seq.?

    3. Did the District Court's denial of retained counsel's Motion for a Continuance deny Defendant a fair trial?

    4. Did the District Court commit reversible error in allowing testimony regarding Defendant's invocation of his right to remain silent?

## FACTS

[¶ 3] In the early morning hours of May 10, 1998, Appellant strangled his friend and co-worker and left her body in her apartment. Later that morning, he called the Casper emergency number and reported a homicide at the victim's apartment. When Casper Police Officer Jim Clark arrived, Appellant summoned him to the third floor landing. Officer Clark stopped Appellant from entering the victim's apartment.

[¶ 4] Another officer arrived and asked Appellant when he last saw the victim. Appellant stated that she came to his apartment during the night with a one-quarter full bottle of rum and they watched movies while he drank. He said that she left his apartment at approximately 10:00 p.m. and he did not know what happened thereafter.

[¶ 5] The officers asked if the victim was at home. Appellant said that she was. The officers asked if she was okay, and Appellant said that she was not, she was dead. Appellant then said that he was feeling ill. The officers took him to his apartment next door and sat him on his couch. He advised the officers that he did not want to say anything else to them.

[¶ 6] The officers entered the victim's apartment and found her body. Appellant was arrested and charged with first-degree murder.

## ASSISTANCE OF COUNSEL

[¶ 7] Appellant claims that he was denied effective assistance of counsel for three reasons: (1) There was no investigation of his background to determine whether there were acquaintances who could provide testimony in support of his mental illness defense; (2) there was a failure to conduct reasonable discovery into the qualifications of the prosecution's designated mental health examiner; and (3) there was no independent examination and testing of the physical evidence, particularly a washcloth containing semen.

[¶ 8] The claim of ineffective assistance of counsel is reviewed under the standards of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Appellant must first show that counsel's performance was deficient. 466 U.S. at 687, 104 S.Ct. 2052. Second, Appellant must show that the deficient performance prejudiced his defense. *Id.* There is a presumption that trial counsel rendered adequate and reasonable assistance. *Beadles v. State*, 984 P.2d 1083, 1086 (Wyo.1999).

[¶ 9] This Court has further explained the standard:

    To warrant reversal of a conviction based upon claims of ineffective assistance of counsel, an appellant must establish the

attorney's performance was less than what a reasonably competent attorney would have done and that the deficient performance so undermined the proper function of the adversarial process that the trial cannot be relied upon as having produced a just result.

*Kolb v. State*, 930 P.2d 1238, 1248 (Wyo. 1996). Appellant complains that he was inadequately represented by consecutive public defenders. He was represented by the same public defender from May 19th through the trial. He was also represented by a second public defender from May 14th to September 17th, by a third public defender from September 17th to November 30th, and by a fourth public defender from November 18th. Even if we assume that Appellant's counsel were not fully prepared for trial, Appellant must show that the deficient performance prejudiced his defense. At trial, Appellant acknowledged he caused the victim's death, and, on appeal, he has failed to identify any other evidence which would produce a different result.

[¶ 10] In support of his argument, Appellant cites the cases of *King v. State*, 810 P.2d 119 (Wyo.1991), *Gist v. State*, 737 P.2d 336 (Wyo.1987), and *Frias v. State*, 722 P.2d 135 (Wyo.1986). In the *King* and *Gist* cases, counsel did not secure the testimony of allegedly favorable eyewitnesses. However, Appellant does not offer any evidence that there were any specific witnesses who could have bolstered his case.

[¶ 11] In the *Frias* case, counsel did not investigate evidence that might have supported a defense that the victim committed suicide. But Appellant does not identify any evidence which would have shown that the victim died other than at his hands.

[¶ 12] Regarding the lack of a search for background witnesses, trial counsel cannot be faulted for failing to investigate unknown witnesses and evidence. To meet his burden of showing ineffective representation, Appellant must make a more concrete demonstration of what counsel should have done.

[¶ 13] Appellant also complains that his trial counsel did not conduct discovery as to the qualifications of the prosecution's mental health examiner. Again, the charge lacks specifics. We are not told what discovery would have revealed. Nor does Appellant explain how he was prejudiced.

[¶ 14] Further, Appellant contends that his trial counsel were ineffective because they did not obtain independent testing of the physical evidence. There is no indication that the examination by the State Crime Lab was inadequate or inaccurate. Appellant does not specify what further testing would have revealed. He also fails to explain why this would have made any difference to his case, since he acknowledged at trial that he caused the victim's death. Thus, Appellant has not demonstrated that he was prejudiced by any alleged deficiencies of trial counsel.

## THE DESIGNATED EXAMINER

[¶ 15] Appellant contends that the prosecution's designated mental health examiner, Paul C. Jennings, Ph.D., was not qualified under Wyoming law. Wyo. Stat. Ann. § 7–11–301(a)(i) (LEXIS 1999) provides as follows: " 'Designated examiner' means a licensed psychiatrist, or other physician with forensic training or a licensed psychologist with forensic training." Wyo. Stat. Ann. § 7–11–305(c) (LEXIS 1999) states: "Only the designated examiners who examined the defendant pursuant to W.S. §§ 7–11–303 or 7–11–304 are competent witnesses to testify as to the defendant's mental responsibility."

[¶ 16] As Dr. Jennings is a licensed psychologist, Appellant contends that he lacked the required forensic training and was, therefore, not competent to testify. However, the evidence does not support this contention. The uncontradicted testimony was that Dr. Jennings had testified in court a number of times before coming to the Wyoming State Hospital in 1989. He spent his first three and one-half years at the Wyoming State Hospital writing forensic reports. He has written letters to trial courts regarding his mental competency examinations. He has performed psychological testing for forensic psychiatrists and has served as a court-appointed examiner. He has attended four annual workshops in Utah for the purpose of qualifying or certifying forensic examiners. He has been authorized by the State of Utah

to conduct forensic examinations. He has attended monthly meetings of psychologists and psychiatrists in Utah.

[¶ 17] It is clear that Dr. Jennings has forensic training and meets the statutory requirement. Therefore, he was competent to testify regarding Appellant's mental status.

## DENIAL OF A CONTINUANCE

[¶ 18] Appellant states that the trial court erroneously denied retained counsel's motion for a continuance. Retained counsel entered an appearance and filed a motion to continue on December 9, 1998, claiming insufficient time to prepare for trial. The motion was heard and orally denied the next day, confirmed by written order on December 14, 1998. The trial started on December 14th, the date which had been set at a scheduling conference nearly five months earlier.

[¶ 19] Granting or denying a motion for continuance is a discretionary ruling by the trial court which will not be disturbed unless there is an abuse of discretion. *Griswold v. State*, 994 P.2d 920, 930 (Wyo.1999).

[¶ 20] Appellant claimed his counsel were insufficiently prepared as he was "vastly undefended" and his counsel had learned just days prior to trial of the nature of the opposing expert's qualifications to opine on his mental responsibility. The trial court was justified in considering that new counsel entered the case knowing the trial date had been scheduled for months. Appellant's decision to add additional counsel at that late date should not require the court to further delay the trial. Also, as discussed above, the record demonstrates that the designated examiner was fully qualified. Additional time to prepare to cross-examine that witness would not likely have caused a different result. We conclude Appellant failed to make an adequate showing of an abuse of discretion. Therefore, we do not find that there was any error committed in denying the motion for continuance.

## TESTIMONY ON APPELLANT'S SILENCE

[¶ 21] Appellant argues that reversible error was committed when testimony was introduced concerning his invocation of his right to remain silent. Officer Clark testified as the prosecution's witness concerning a conversation that occurred between him and Appellant at the scene. The pertinent portion of that testimony follows:

A    I asked him if [the victim] was at home. He advised that, yes, she was at home. I asked him if she was okay. And he advised me, no, that she was not okay, that she was dead.

Q    Okay. Did [Appellant] say anything else to you at this point?

A    That he was feeling ill.

Q    Okay.

A    And it was at that point that I took him back into his apartment and sat him on his couch.

Q    Okay. And at that point, did he say anything else to you?

A    Yes. He advised that he didn't—he didn't feel that he wanted to say anything else to me.

Q    Okay. Did he reassure you in any fashion?

A    Yes, he did.

Q    What did he say?

A    When I sat on the couch with him and I turned to walk away, he kept trying to reassure me that I didn't have to worry about him, that he wasn't dangerous.

[¶ 22] Later, during Officer Clark's testimony, the defense moved for a mistrial. Appellant argues that the denial of that motion was erroneous under the decision in *Tortolito v. State*, 901 P.2d 387 (Wyo. 1995). The *Tortolito* case states that prosecutorial use of the citizen's silence to infer the guilt of the citizen is constitutionally prohibited. 901 P.2d at 390. Failure to respect the constitutional right of the citizen-accused not to have his silence called to the jury's attention will entitle the accused to a reversal of conviction. *Id.* But, a reference to silence which is not a "comment" will not be reversed absent a showing of prejudice. *Id.* A comment upon an accused's silence occurs when it is used to the prosecution's advantage either as substantive evidence of guilt or

to suggest to the jury that the silence is an admission of guilt. 901 P.2d at 391.

[¶ 23] At the trial in the *Tortolito* case, the prosecutor's questions to police officers elicited numerous answers that Tortolito remained silent when officers accused him of taking money. *Id.* During his opening statement, the prosecutor mentioned Tortolito's silence in the face of police accusations. *Id.* During his closing argument, he characterized the silence as an admission. *Id.*

[¶ 24] Application of the *Tortolito* doctrine to this case demonstrates that the prosecution did not "comment" upon Appellant's silence. The prosecution did not attempt to use his silence to its advantage. There was no argument to the jury that this was evidence of guilt or an admission of guilt. Appellant does not show that he was prejudiced by the officer's remark. Therefore, the trial court did not commit error by denying the motion for a mistrial.

## CONCLUSION

[¶ 25] We conclude that Appellant has not shown he was denied effective assistance of counsel, the prosecution's designated examiner was competent to testify under Wyoming law, the trial court did not abuse its discretion in denying the motion for continuance, and the reference to Appellant's silence does not entitle him to a reversal of his conviction. Therefore, we affirm the Judgment and Sentence.