2002 WY 74

**Shirley WEIDT, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 01–84.

Supreme Court of Wyoming.

May 17, 2002.

**848**

Ken Koski, State Public Defender; Donna Domonkos, Appellate Counsel; and Marion Yoder, Senior Assistant Public Defender, Representing Appellant. Argument by Ms. Yoder.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, and Robin Sessions Cooley, Senior Assistant Attorneys General, Representing Appellee. Argument by Ms. Cooley.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

HILL, Justice.

[¶ 1] Shirley Ann Weidt (Weidt) appeals a conviction for interference with custody alleging that she was denied a fair trial because of a variance between the offense charged in the Information and the instructions given to the jury. Weidt also challenges the sufficiency of the evidence to support the conviction and the competency of her trial attorney's representation. We find no error in any of the claims raised, and we affirm Weidt's conviction.

## ISSUES

[¶ 2] Weidt presents three issues for consideration:

*Issue I*

Was the fact that Appellant was charged with a crime other than the one of which she was found guilty and for which she was sentenced reversible error?

*Issue II*

Was there sufficient evidence adduced to support Appellant's conviction for violation of W.S. § 6-2-204(a)(ii)(d)(ii), the sole statutory section with which Appellant was charged?

*Issue III*

Did Appellant's trial counsel fail to adequately represent Appellant?

The State agrees with Weidt's statement of the issues but presents them using slightly different language:

I. Whether Appellant was properly convicted by a jury of the offense alleged in the Information?

II. Whether the evidence was sufficient to support Appellant's conviction of interference with custody?

III. Whether Appellant was denied effective assistance of counsel at trial?

## FACTS

[¶ 3] Weidt is the mother of a young daughter. The father of the girl, John Sherard (Sherard), is the primary custodial parent. Pursuant to a court order issued on March 22, 2000, Weidt was prohibited from having any unsupervised visitations with her daughter. In spite of the court order, Sherard allowed the girl to have an unsupervised visit. On June 25 or 26,[1] 2000, Sherard observed Weidt's van parked outside of her friend's house in Sheridan. The girl wanted to see her mother, so Sherard agreed to drop her off with the caveat that he would pick her up in a couple of hours. Sherard watched his daughter walk up to the house and then left when he saw Weidt. Later, Sherard returned only to find Weidt's van gone. Sherard located the van at Weidt's rural residence, but he did not approach the house because he believed that there was a court order preventing him from entering the property.[2] Using his cell phone, Sherard attempted to contact Weidt. Despite the fact that he could see that the lights and television were on, no one answered the phone.

[¶ 4] Sherard continued to search for his daughter on his own, but he also contacted the Sheriff's office, which began to look for Weidt and the girl after being provided with a copy of the district court's custody order. Several days later, Sherard received a phone call from Weidt, who informed him that he "wasn't going to ever see [their daughter] again, that [Weidt] was going to hide her out in the prairie dog fields; and [that Sherard] would never see her again."

[¶ 5] The police located the girl on July 12 and arrested Weidt. After a one-day jury trial, a verdict of guilty to one count of interference with custody was returned. Additional facts will be developed in our discussion below of the issues raised on appeal by Weidt.

## DISCUSSION

### 1. Variance between Information and Jury Instruction

[¶ 6] In order to address this issue, we begin by setting forth the context in which it appears. Weidt was charged with interference with custody, which provides, in its entirety:

§ 6–2–204. **Interference with custody; presumption of knowledge of child's age; affirmative defenses; penalties.**

(a) A person is guilty of interference with custody if, having no privilege to do so, he knowingly:

   (i)   Takes or entices a minor from the custody of the minor's parent, guardian or other lawful custodian; or

   (ii)   Fails or refuses to return a minor to the person entitled to custody.

(b) Proof that the child was under the age of majority gives rise to an inference that the person knew the child's age.

(c) It is an affirmative defense to a prosecution under this section that:

   (i)   The action was necessary to preserve the child from an immediate danger to his welfare; or

   (ii)   The child was not less than fourteen (14) years old and the child was taken away or was not returned:

     (A) At his own instigation; and

     (B) Without intent to commit a criminal offense with or against the child.

(d) Interference with custody is a felony punishable by imprisonment for not more than five (5) years if:

   (i)   The defendant is not a parent or person in equivalent relation to the child; or

   (ii)   The defendant knowingly conceals and harbors the child or refuses to reveal the location of the child to the parent, guardian or lawful custodian.

(e) Interference with custody which is not punishable under subsection (d) of this section is a felony punishable by im-

---

1. At trial, the parties expressed confusion over the correct date.

2. After Sherard testified, the State stipulated there was, in fact, no such order.

prisonment for not more than one (1) year and one (1) day.

Wyo. Stat. Ann. § 6–2–204 (LexisNexis 2001). The Information charging Weidt with interference with custody provided:

Comes now Dianna D. Bennett, Deputy County and Prosecuting Attorney of the County of Sheridan and State of Wyoming, and in the name and by the authority of the State of Wyoming informs the Court and gives the Court to understand that SHIRLEY ANN WEIDT, late of the county aforesaid, on or about June 27, 2000, at the County of Sheridan, in the State of Wyoming, did unlawfully having no privilege to do so, knowingly fail or refuse to return a minor to the person entitled to custody, to-wit: in that the said SHIRLEY ANN WEIDT, having no privilege to do so, knowingly failed to return a minor child to the person entitled to custody, John B. Sherard, the minor child's father and furthermore, SHIRLEY ANN WEIDT refuses to reveal the location of the child to Mr. Sherard;

In violation of W.S. § 6–2–204(a)(ii)(d)(ii)

"INTERFERENCE WITH CUSTODY"

Pursuant then to the Information, Weidt was charged with, having no privilege to do so, failing or refusing to return the minor child, her daughter, to the person entitled to have custody, Sherard, and knowingly concealing, harboring or refusing to reveal the location of the girl to Sherard. Inexplicably, the jury instruction proffered by the State, however, omitted the language from subsection (d) relating to "knowingly concealing, harboring or refusing to reveal the location of [their daughter] to Sherard:"

### INSTRUCTION NO. 3

The elements of the crime of Interference with Custody as charged in this case are

1. On or about the 25th or 26th of June, 2000

2. In the County of Sheridan, and State of Wyoming

3. The Defendant, Shirley Ann Weidt

4. Having no privilege to do so

5. Failed or refused to return a minor,[3] ..., to the person entitled to custody of the minor.

If you find from your consideration of all of the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the Defendant guilty.

If, on the other hand, you find from your consideration of all of the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty.

The jury returned a verdict of guilty predicated on Instruction Number 3. Defense counsel brought the discrepancy between the Information and the jury instruction to the district court's attention at sentencing. The district court resolved the issue by imposing the penalty under subsection (e):

The Court is going to rule that although the State had an opportunity to charge this Defendant under the five-year felony portion of 6–2–204 after the case was bound over from Circuit Court, it elected to present an element instruction for the smaller, one-year felony under Subsection (a) when the case was presented to the jury for deliberation. Therefore, the Court is going to enter a conviction against the Defendant for having violated 6–2–204(a)(ii).

The penalty section that applies to a violation of that statute is found under Subsection (e)....

The Court observes that had either side requested an element instruction that would have included the concealing and harboring language of Subsection (d) the Court would have granted that instruction.

The district court proceeded to sentence Weidt under subsection (e).

[¶ 7] On appeal, Weidt claims that there was a prejudicial variance between the Information and the jury instruction. Weidt contends that she was, in effect, never tried on the charge that was filed against her. She argues that her counsel entered trial with the expectation that he would be able to offer an

---

**3.** The actual instruction contained the name of the child here.

affirmative defense to the element charged under subsection (d) that Weidt "knowingly conceal[ed] and harbor[ed] the child or refuse[d] to reveal the location of the child to the parent[.]" Wyo. Stat. Ann. § 6–2–204. Weidt insists that she was prejudiced because she could have been acquitted of the charge of interference with custody based upon her defense to that element.

[¶ 8]   Weidt did not offer an objection to the proposed instruction. Therefore, a plain error analysis applies. *Taylor v. State,* 2001 WY 13, ¶ 16, 17 P.3d 715, ¶ 16 (Wyo.2001). Plain error exists if it can be demonstrated that the record clearly shows an error that has transgressed a clear and unequivocal rule of law and has adversely affected a substantial right of the defendant. *Id.*

[¶ 9]   "A variance between the information and the jury instruction does not automatically result in reversible error." *State v. Williams,* 18 S.W.3d 461, 469 (Mo. App. E.D.2000).

Such a variance is fatal where the instruction submits a new and distinct offense to the jury. *State v. Jones,* 930 S.W.2d 453, 455 (Mo.App. E.D.1996). Instructing on one form of the offense where the information charges another form of the same offense is not reversible error absent a showing that the variance between the information and the instruction is material

and prejudicial. [*State v. Lee,* 841 S.W.2d 648, 651 (Mo. banc 1992)] Variances are material where they affect whether the defendant received adequate notice of the charges against him. *State v. Whitfield,* 939 S.W.2d 361, 366 (Mo. banc 1997). Variances are prejudicial where they affect the defendant's ability to defend the charge against him. *Id.*

*Id.* at 469.   A variance may also be prejudicial if it leaves a defendant open to the risk of double jeopardy.[4] *State v. Sherrod,* 131 Idaho 56, 951 P.2d 1283, 1286 (App.1998).

[¶ 10]   The crime of interference with custody may be charged in two distinct ways under the statute. Subsection (d) provides that interference with custody is a felony punishable by up to five years imprisonment if one of two conditions is proved: (1) the defendant is not a parent or person in equivalent relation to the child; or (2) the defendant knowingly conceals and harbors the child or refuses to reveal the location of the child to the parent, guardian, or lawful custodian. Subsection (e) is effectively a catchall provision since it provides that any interference with custody not punishable under subsection (d) is a felony punishable by imprisonment for not more than one year and one day. If placed side by side, the elements of a charge under either subsection would look like this:

### INTERFERENCE WITH CUSTODY
#### Wyo. Stat. Ann. § 6–2–204

| *Subsection (d)* | *Subsection (e)* |
| --- | --- |
| 1.  On or about the 25th or 26th of June, 2000 | 1.  On or about the 25th or 26th of June, 2000 |
| 2.  In the County of Sheridan, and the State of Wyoming | 2.  In the County of Sheridan, and the State of Wyoming |
| 3.  The Defendant, Shirley Ann Weidt | 3.  The Defendant, Shirley Ann Weidt |
| 4.  Having no privilege to do so | 4.  Having no privilege to do so |
| 5.  Failed or refused to return a minor, (name of child), to the person entitled to custody of the minor | 5.  Failed or refused to return a minor, (name of child), to the person entitled to custody of the minor |
| 6.  Knowingly concealed or harbored the child, (name of child), or refused to reveal the location of the child to the parent, guardian, or lawful custodian | |

The Information specified a charge of inter-

4.   There is no contention by Weidt that the alleged variance at issue here could leave her open to double jeopardy and, under the circumstances

of this case, we cannot perceive any possibility of such a situation arising here.

ference with custody under subsection (d) while the jury was instructed on a charge of interference under subsection (e). There was no variance on the crime underlying either the Information or the jury instruction—Weidt was accused of and the jury was instructed on interference with custody under Wyo. Stat. Ann. § 6-2-204. There was a difference between the Information and the jury instruction on the subsection that defined the penalty to be applied for the crime. Assuming that difference rose to the level of a variance, however, it cannot reasonably be argued that Weidt was not on notice of the charge against her. The elements of the crime of interference with custody are identical under either subsection with the only difference being the additional element under subsection (d), which, if proved, provides an enhanced penalty for the crime. The absence of that additional element in the jury instruction does not affect whether or not the crime of interference with custody itself was committed under the statute. Accordingly, any variance between the Information and the jury instruction did not materially affect notice to Weidt of the crime for which she was charged.

[¶ 11] Weidt claims that she could have been acquitted of the charge set forth in the Information based upon an affirmative defense that she did not conceal, harbor or refuse to reveal the location of the girl. She insists that there was insufficient evidence produced at trial to support a finding under subsection (d), and the absence of that element from the jury instruction prejudiced her ability to make that defense.

[¶ 12] Weidt's contention that her defense was prejudiced by the variance cannot withstand scrutiny. First, Weidt had every opportunity to present her defense. The parties approved the jury instruction that omitted language from subsection (d) in an instruction conference that took place **after** the parties had presented their case to the jury. Furthermore, defense counsel acknowledged that he did not notice the discrepancy between the Information and the jury instruction until just prior to the sentencing hearing. Accordingly, it is impossible for the alleged variance between the In-

formation and the jury instruction to have had any affect whatsoever on Weidt's presentation of her defense.

[¶ 13] Presented with a full opportunity to make a defense, Weidt chose to make her stand on the question of whether she failed or refused to return the girl to Sherard. Weidt's defense counsel made the point during his closing:

> You'll have a chance to go through all of the elements. And when you get down to Number 5, where it says "... failed or refused to return a minor," there has been no testimony given where Shirley refused to return a minor.

Weidt's defense was, essentially, that Sherard never asked for his daughter's return. The failure to instruct the jury on subsection (d) did not impact Weidt's ability to present her chosen defense. There has been no showing that the variance between the Information and the jury instruction was material or prejudicial to Weidt's notice of the crime charged or her ability to defend against it.

### 2. Sufficiency of the Evidence

[¶ 14] In the section of her brief dedicated to a challenge to the sufficiency of the evidence supporting the conviction, Weidt also asserts several claims that are best characterized as alleged evidentiary errors. We need to address those claims first since they impact any consideration of the evidence in support of Weidt's conviction. The admission of evidence is consigned to the sound discretion of the district court judge. *Hodges v. State*, 904 P.2d 334, 340 (Wyo.1995). If no objection is posed, then review is under the plain error standard.

> Plain error exists when 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him. *Yetter v. State*, 987 P.2d 666, 668 (Wyo. 1999) (quoting *Sandy v. State*, 870 P.2d 352, 358 (Wyo.1994)); *see also Mora v. State*, 984 P.2d 477, 480 (Wyo.1999).

*Mazurek v. State*, 10 P.3d 531, 535 (Wyo. 2000).

[¶ 15] First, Weidt contends that the trial court should have admitted into evidence an order issued on October 4, 1999, setting forth the initial custody and visitation rights between Weidt and Sherard. Weidt contends that the order would have shown that "custody," as used in subsection (d), did not reside exclusively with Sherard. Weidt notes that Sherard referred to a court "order" barring him from entering Weidt's property on numerous occasions in his testimony. She insists that admission would have impeached Sherard's testimony on this point.

[¶ 16] At trial, the State introduced into evidence, without objection, a copy of the district court order restricting Weidt's visitation rights with her daughter. Later, defense counsel sought admission of a court order, which apparently arose out of the first custody hearing between Weidt and Sherard. Sherard was recalled to the stand by the defense whereupon defense counsel sought to impeach Sherard on his claim that he was prohibited from entering Weidt's property by court order. The following exchange then took place between the court and defense counsel:

> The Court: The—[defense counsel], if the only reason you want this in evidence is to demonstrate to the jury that there is no written order of the Court after the September 1, 1999 hearing prohibiting Mr. Sherard from going on Ms. Weidt's property, I do not want to admit the document into evidence, because there's a number of other items contained therein that might provide some confusion. Is there any other purpose?
>
> [Defense counsel]: **That would be the only purpose[.]**
>
> The Court: [Prosecutor], do you stipulate and agree that there is no order from the Court in Defendant's Exhibit A that would prohibit Mr. Sherard from going onto Ms. Weidt's premises?
>
> [Prosecutor]: We would stipulate, Your Honor.
>
> The Court: Okay. You may accept that fact as proved. The Court is going to deny admission of the exhibit into evidence for the reasons stated.

(Emphasis added.) Weidt never argued to the district court that the order was offered for any reason other than to impeach Sherard on his claim that a court order prohibited him from entering her property. The prosecutor stipulated that no such order existed. The Court felt that the order contained extraneous material that could create confusion for the jury. Weidt fails to offer us any argument on why admission of the order would not cause confusion to the jury. Instead, she makes an argument—the order could have been used to defeat a claim under subsection (d) that she concealed, harbored or refused to reveal the girl's location—that was not raised by defense counsel during the trial. We will not consider whether the order should have been admitted into evidence on a theory raised for the first time in this Court on appeal. The district court's decision to deny admission of the proffered order was a discretionary act within its authority.

[¶ 17] Related to her argument on the admissibility of the order, Weidt argues that even eliciting testimony alluding to the prior judicial rulings in this case was error. She claims that any reference by Sherard to the previous order was reversible error. Relying on our decision in *Sheeley v. State*, 991 P.2d 136 (Wyo.1999), Weidt contends that testimony "appears to quote [the] judge on an ultimate issue" invading the province of the jury and depriving her of a fair trial. Essentially, Weidt claims that the references to the previous court orders effectively constituted an expression of opinion on the evidence indicating a possible bias on the part of the trial judge.

[¶ 18] Weidt's argument has no merit. Sherard testified that he did not enter Weidt's property to ascertain whether his daughter was there because he believed that he was prohibited from doing so by an order of the court. Sherard offered this testimony solely as an explanation for his actions. We fail to see how this testimony constituted a representation by the judge on the evidence. In *Sheeley*, the prosecutor asked a witness during cross-examination whether or not an investigator recalled what the victim had been told by a judge during the preliminary hearing regarding her testimony in that pro-

ceeding. The investigator responded that he thought the judge cautioned her in regard to perjury. We held that this exchange was reversible error for the obvious reason that it injected possible judicial bias into the trial. 991 P.2d at 139–40. Eliciting the testimony concerning the judge's statement in another proceeding may have allowed the jury to conclude that the trial judge believed the evidence favored a finding of guilt. *Id.* In that case, the judge, through the prosecutor's line of questioning, was effectively commenting on the weight and quality of the evidence. That is not the situation before us in this case. There is nothing in the transcript or the record indicating that a witness testified about a statement made by the judge in another proceeding. Similarly, there is nothing in the record indicating that the judge made any comment about the testimony or any other evidence in front of the jury that could be considered improper. What the record does show is that Sherard was testifying about his personal belief of what he could or could not do pursuant to a court order. Our decision in *Sheeley* simply bears no relevance to the situation in this case, and we find no error.

[¶ 19] Next, Weidt suggests that the district court should have stricken specific testimony of Sherard relating to a phone call from Weidt where she allegedly stated that he "wasn't going to ever see [their daughter] again, that [Weidt] was going to hide her out in the prairie dog fields; and [that Sherard] would never see her again." Weidt describes this testimony as "fantastic" and "incendiary," which was improperly elicited by the prosecutor. Again, Weidt fails to offer any cogent reason why this testimony was improperly solicited or why it should have been stricken by the district court. The testimony is clearly not hearsay. W.R.E. 801(d)(2). Weidt does not offer an analysis pursuant to W.R.E. 403 that the statement's probative value was substantially outweighed by the danger of unfair prejudice beyond attaching labels like "fantastic" and "incendiary" to it. Again, Weidt has failed to present a cogent argument, and we will decline to consider her argument any further.

[¶ 20] Mixed within her arguments about the district court's handling of the evidence, Weidt manages to offer a contention that the evidence does not support her conviction for interference with custody.

"The appellate test for sufficiency of evidence is whether a rational trier of fact could have been sufficiently armed by the evidence to find the essential elements of the offense beyond a reasonable doubt. In assessing that issue, we view the evidence in a light most favorable to the state, affording them the benefit of all reasonable inferences to be drawn therefrom. It is not our task, let alone our place, to reweigh the evidence or reexamine the credibility of the witnesses."

*Nollen v. State,* 12 P.3d 682, 684 (Wyo.2000) (quoting *Rodriguez v. State,* 962 P.2d 141, 148 (Wyo.1998) and *Curl v. State,* 898 P.2d 369, 375 (Wyo.1995)).

[¶ 21] Our review of the evidence indicates a rational trier of fact could have found the essential elements of the offense of interference with custody beyond a reasonable doubt. The essential elements of interference with custody are that Weidt: (1) having no privilege to do so; (2) failed or refused to return a minor to the person entitled to have custody. Sherard had custody of the girl while Weidt had limited visitation rights. Despite the restrictions of her visitations with their daughter, Sherard elected to drop her off so she could visit with Weidt for two hours. When Sherard returned, Weidt and the girl were gone. Sherard located Weidt's van at her home but did not go onto the property because he believed, incorrectly as it turned out, that he could not enter onto it. Nevertheless, Sherard attempted to contact Weidt by phone but never received an answer. Sherard informed law enforcement, which maintained a lookout for Weidt. Several days later, Weidt called Sherard and told him that he was never going to see his child again. For 17 days, Weidt kept the girl with her. A deputy testified that when Weidt was arrested, her van was parked around the back of a friend's house out of view from the street. This is sufficient evi-

dence to support Weidt's conviction.[5]

### 3. Ineffective Assistance of Counsel

[¶ 22] In order to prevail on a claim of ineffective assistance of counsel, a dual showing that the counsel's performance was deficient and that the deficient performance prejudiced the defense must be made. *Dike v. State*, 990 P.2d 1012, 1027 (Wyo. 1999), *cert. denied*, 529 U.S. 1078, 120 S.Ct. 1697, 146 L.Ed.2d 502 (2000).

Our standard of review with respect to this issue counsels that the paramount determination is whether, in light of all the pertinent circumstances, trial counsel's acts or omissions were outside the range of professionally competent assistance. We indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. An appellant claiming ineffective assistance of counsel must demonstrate on the record that counsel's performance was deficient and that prejudice resulted. We also inquire as to whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Chapman v. State*, 2001 WY 25, ¶ 6, 18 P.3d 1164, ¶ 6 (Wyo.2001); *Pearson v. State*, 12 P.3d 686, 691–92 (Wyo.2000).

*Schmidt v. State*, 2001 WY 73, ¶ 32, 29 P.3d 76, 86 (Wyo.2001).

[¶ 23] Weidt claims that her trial counsel made a series of errors and omissions that constituted a deficient performance and individually and/or collectively resulted in prejudice to her defense. Weidt lists four alleged errors by her trial counsel: (1) failure to use an affirmative defense asserted in pretrial motions; (2) failure to elicit impeachment of Sherard by pursuing admission of the custody order; (3) failure to prevent Sherard from testifying about the contents of the judge's orders and injecting judicial opinion on the evidence in violation of *Sheeley*, 991 P.2d 136; and (4) failure to move for a judgment of

acquittal in light of the variance between the Information and the jury instruction.

[¶ 24] In a pretrial motion requesting appointment of a guardian ad litem, defense counsel intimated that he would assert the affirmative defense of "necessity" pursuant to Wyo. Stat. Ann. § 6–2–204(c)(i) ("It is an affirmative defense to a prosecution under this section that ... [t]he action was necessary to preserve the child from an immediate danger to his welfare[.]"). The affirmative defense was not overtly pursued at trial. The defense instead focused on whether or not the State proved Weidt had failed or refused to return the minor child to the person entitled to custody. Weidt contends that competent defense counsel would have pursued the affirmative defense. She points out that there was testimony in support of the defense. Specifically, the owner of the house where Sherard left the girl testified that she was left there despite the fact that Weidt was not present at the time. Weidt also argues that there were other witnesses who could have testified in support of the defense, but they were not interviewed nor called by counsel.

[¶ 25] Weidt fails to identify these potential witnesses or offer details on their proposed testimony. Absent those specifics, Weidt's argument is not persuasive. *Shipman v. State*, 2001 WY 11, ¶ 12, 17 P.3d 34, ¶ 12 (Wyo.2001). Furthermore, it is reasonably arguable that defense counsel's failure to pursue the affirmative defense was a tactical decision. Clearly, defense counsel was alerted to the possibility of the defense since it was he who initially raised its potential application prior to trial. The evidence produced at trial, however, suggests that any argument in support of the defense would have been difficult to maintain. Sherard testified that Weidt appeared at the door with the girl before he left. Importantly, the girl also testified that her mother was at the house. In order to press the defense as suggested by Weidt, defense counsel would have had to challenge the credibility of a nine-year-old child. In the face of that prop-

---

**5.** To the extent Weidt argues that there was insufficient evidence to support a finding under subsection (d), we note that she was not convict-ed under that subsection, so whether or not there was sufficient evidence on that point is irrelevant.

osition, we cannot say that the decision by defense counsel not to pursue the defense was evidence of a deficient performance.

[¶ 26] The next two claims of deficient performance alleged by Weidt—failure to impeach Sherard through admission of the custody order and invoking the court as a "virtual witness" through Sherard's testimony—have largely been addressed above. Defense counsel successfully impeached Sherard on the question of whether or not there was a court order prohibiting him entry onto Weidt's land. Once the State stipulated that there was no order, the district court denied admission of the custody order because of its potential to confuse the jury. It is not clear what else defense counsel could have accomplished on this point. Continued argument by counsel over the admissibility of the custody order after he had succeeded in his goal of impeaching Sherard and in the face of the district court's clear and unequivocal decision denying admission would have been futile, perhaps even detrimental. Defense counsel's performance in this instance was not deficient. We also rejected Weidt's claim of error based upon an alleged violation of our decision in *Sheeley*, and for the reasons we noted above, this claim will not support a claim of ineffective assistance either.

[¶ 27] In her final claim of deficient performance by her trial counsel, Weidt contends that her counsel should have moved for a judgment of acquittal in light of the variance between the Information and the jury instruction. As the State points out, however, "alerting the prosecutor to such facts could have meant an additional four years in prison for Appellant." The trial court noted during sentencing that he would have instructed the jury on subsection (d) had its absence from the jury instruction been brought to his attention. Even if one assumes that defense counsel's failure to move for a judgment of acquittal constituted a deficient performance, Weidt has failed to show that it prejudiced her defense. While we are not convinced that the failure to move for a judgment of acquittal under these circumstances constituted a deficient performance, the failure by Weidt to show any prejudice to her defense is fatal to her claim for ineffective assistance of counsel.

## CONCLUSION

[¶ 28] Finding no error on any of the claims put forth by Weidt, her conviction is hereby affirmed.

VOIGT, Justice, filed a specially concurring opinion.

VOIGT, Justice, specially concurring.

[¶ 29] I agree with the result and reasoning of the majority opinion. I write separately only to contrast this situation with that in *Black v. State*, 2002 WY 72, 46 P.3d 298 (Wyo.2002), where I dissented. In *Black*, the dissent maintained that the jury could not convict the appellant of aiding and abetting the principal crimes unless it made a factual determination that aiding and abetting had actually occurred. Because the jury instructions in that case did not make clear to the jury that such a determination had to be made, the appellant was prejudiced. Here, to the contrary, to convict of the lesser felony, the jury did not need to make a factual determination on the additional element to allow enhancement of the penalty under Wyo. Stat. Ann. § 6–2–204(d) (LexisNexis 2001), so the failure to so instruct the jury did not prejudice the appellant. If anyone was prejudiced, it was the State, and it was the State's fault for not offering an instruction covering Wyo. Stat. Ann. § 6–2–204(d).