2003 WY 8

Dustin Allyn **LEE**, Appellant (Defendant),

v.

The **STATE** of Wyoming, Appellee (Plaintiff).

No. 01–186.

Supreme Court of Wyoming.

Jan. 22, 2003.

1225

Kenneth M. Koski, State Public Defender; and Donna D. Domonkos, Appellate Counsel, Representing Appellant.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Robin Sessions Cooley, Senior Assistant Attorney General, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE and VOIGT, JJ.

LEHMAN, Justice.

[¶1] Dustin Allyn Lee, appellant, was found guilty by jury of felony possession of methamphetamine in excess of three grams. He seeks reversal of that conviction claiming the admission of physical characteristic evidence depicting appellant as an ongoing user of the drug was not relevant to the crime of possession of methamphetamine in excess of three grams. We affirm.

### ISSUE

[¶2] Whether plain error was committed by the State when the investigating officer testified of his observation of round open sores on appellant's face and body that are consistent with ongoing use of methamphetamine and are commonly referred to as "Crank Bugs."

### FACTS

[¶3] Officers and an ambulance were dispatched to a motel in Gillette after receiving a report that a man in one of the rooms was not responding to motel staff. A summary of the course of events upon the officers' contact with appellant in the room indicates appellant's appearance was ill, pasty, shaky, bloodshot and watering eyes with no odor of alcohol, difficulty in standing, and lack of coordination; admission to the officers of using methamphetamine; discovery of a plastic pen housing with a white powder residue found to contain methamphetamine; appellant's production of a marijuana cigarette; a film canister containing .39 grams of methamphetamine rocks; and, finally, a plastic baggie containing 27.96 grams of rock methamphetamine.

[¶4] Appellant only denied knowledge of the plastic baggie containing 27.96 grams of methamphetamine. The appearance of appellant was discussed by each officer who testified and included some of the non-exhaustive attributions listed above. Appellant argues the testimony of the investigating officer's observations of open sores on appellant's face and body is not relevant to the possession of the 27.96 grams of rock methamphetamine.

* Chief Justice at time of expedited conference.

## STANDARD OF REVIEW

■ [¶ 5] No objection to the testimony was made at trial; therefore, the plain error standard is at work requiring the appellant to make a three-part showing:

First, the record must clearly present the incident alleged to be error. Second, appellant must demonstrate that a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable, way. Last, appellant must prove that he was denied a substantial right resulting in material prejudice against him.

*Ogden v. State*, 2001 WY 109, ¶ 9, 34 P.3d 271, ¶ 9 (Wyo.2001) (quoting *CB v. State*, 749 P.2d 267, 268–69 (Wyo.1988)). *See also Pearson v. State*, 12 P.3d 686, 690 (Wyo. 2000).

## DISCUSSION

[¶ 6] For context we quote the offending language:

Q. When you are sitting down there close to him looking at him, do you notice anything about his facial features, his arms, his body, his demeanor, other than that uncoordination that you've already described?

A. I noticed that his face was very badly pitted with small round open sores. A person would generally, I think, associate them with something like acne. But I later got a little better look at his entire upper torso and it was not consistent with acne.

. . .

Q. Did you ask him if he was under the influence of drugs or narcotics substances?

A. Yes, I did.

Q. And did he respond in any manner?

A. Yes.

Q. What did he say?

A. He said he had used methamphetamine. And I had asked him if he had used any other drugs, and he said no, just methamphetamine. I asked him when the last time it was that he used it, and he said the night before.

Q. Did that start kind of clicking looking at his sores?

A. Yes, it did.

Q. Why is that?

A. Well, methamphetamine can produce—the technical term is formication. It's called crank sores or crank bugs. And what it is is it's a reaction to a false signal sent by the brain and the person begins to pick at a certain area of their body and picks open a very small area that would look like a pimple being dug open. Actually there was nothing there. There was no sore there to start with.

It's formed from two things occurring sometimes simultaneously, sometimes on their own. One is that a person under the influence of methamphetamine may hallucinate and see actual crank bugs or actual small bugs on their skin. And they try to pick away that bug which continues to replace itself in the same spot. The other thing is that methamphetamine—what it's doing in your brain is it's releasing dope in a neuro transmitter and it's sending out a false signal, an inverse signal, to the nerves and the nerve there at that particular point is sending out a signal that it's being touched or being stimulated in some way. And the person will pick at that. What eventually occurs is the nerve ending is damaged. The signal goes away and the person leaves that particular spot alone. Later another false signal is sent or a hallucination or both and the person begins working at that spot and forms another small open ulcer on their person.

Q. We digressed a little bit, but we were—earlier you said you saw other parts of his body other than his face later on. Where did these other sores exist on the defendant that you know of?

A. On both arms and just a few on the chest and stomach area.

[¶ 7] For further enlightenment, the lack of objection to that testimony was followed by cross-examination of the officer which included the following exchange.

Q. Okay. Well, let me go over what you've said here. The defendant, when you got there, was basically using his hands like claws? He didn't have any manipulation ability?

A. That's correct.

Q. He had those round sores on him? .

A. Yes. That's correct.

Q. I've seen pictures. Pretty sorry sight, wasn't he?

A. Yes, he was.

The picture referenced by appellant's counsel was a photograph of appellant's face and upper torso, the introduction of which was stipulated by the parties.

[¶ 8] We begin our analysis by according appellant our acknowledgment that the record clearly presents the incident alleged to be error. The second prong, however, of the plain error standard, requiring a demonstration that a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable way, falls short of the mark. Appellant cites W.R.E. 401 as the unequivocal rule of law that was violated since the evidence regarding "crank bugs" was not relevant to prove appellant possessed over three grams of methamphetamine.

[¶ 9] A low threshold exists for determining that evidence is relevant.

Evidence is relevant if it has *"any* tendency to make the existence of *any* fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 401. In criminal cases, "[e]vidence is *always* relevant if it tends to prove or disprove one of the elements of the crime charged." *Grabill v. State*, 621 P.2d 802, 809 (Wyo.1980); *see also Lancaster v. State*, 2002 WY 45, ¶ 42, 43 P.3d 80, ¶ 42 (Wyo.2002); *Geiger v. State*, 859 P.2d 665, 667 (Wyo.1993).

*Wilks v. State*, 2002 WY 100, ¶ 9, 49 P.3d 975, ¶ 9 (Wyo.2002) (emphasis added).

[¶ 10] Lee was charged with felony possession of methamphetamine. When considering possession of a controlled substance we have stated:

To convict for possession of illicit drugs, the prosecution must establish that [the defendant]: (1) either individually or jointly with another exercised dominion and control over the substance; (2) had knowledge of its presence; and (3) had knowl-

edge that the substance was a controlled substance. *Saldana v. State*, 846 P.2d 604, 620 (Wyo.1993); *Wise v. State*, 654 P.2d 116, 119 (Wyo.1982). It is not necessary to offer direct evidence of the defendant's actual possession of the contraband. "[C]ircumstantial evidence linking together a series of facts" allowing a reasonable inference that the defendant had the requisite control and knowledge of the substance is sufficient to show constructive possession. *Wise*, 654 P.2d at 119.

*Houghton v. State*, 6 P.3d 643, 647 (Wyo. 2000) (quoting *Mora v. State*, 984 P.2d 477, 481 (Wyo.1999)). With the above statement in mind, we consider that the prosecution was required to establish that Lee had knowledge not only of the presence of the substance but also that the substance was a controlled substance. Certainly the physical characteristics of ongoing methamphetamine use by the defendant would be relevant to show that Lee had such knowledge. Courts in other jurisdictions have held in a similar manner. *See State v. Thomas*, 329 So.2d 704, 707 (La.1976) (holding conviction for drug possession required a showing that the defendant knew the substance he possessed was a narcotic, therefore evidence of track marks and narcotic paraphernalia were admissible to show he had knowledge of heroin and that what he possessed was heroin); *State v. Williams*, 134 Idaho 590, 6 P.3d 840, 843 (App.2000) (holding the fact that Williams had previously used methamphetamine was relevant because prior methamphetamine use made it more likely that he possessed the drug with the intent to inject it rather than for some innocent purpose); *State v. Thomas*, 20 N.C.App. 255, 201 S.E.2d 201, 202 (1973) (holding the presence of track marks on defendant's arm was relevant to show his knowledge and familiarity with the drug he was charged with possessing).

[¶ 11] In this case the officer's observation of "crank bugs" tended to show that the defendant displayed the characteristics of ongoing methamphetamine use. Ongoing methamphetamine use is relevant to whether the *defendant* knew the substance he possessed was methamphetamine and whether he did in fact have knowledge of this

possession. The fact that the amount in possession weighs more or less than three grams plays no role in that assessment. We are not suggesting that evidence of drug use *must* be admitted in cases where the defendant is charged with felony drug possession. As always, relevant evidence may be excluded, if "its probative value is substantially outweighed by the danger of unfair prejudice." W.R.E. 403.

[¶ 12] In fact, appellant asserts W.R.E. 403 was violated because the prejudicial effect of the testimony outweighed the probative value. As a final analysis, therefore, we note the following to both the third prong of the plain error standard, as well as the claimed prejudice pursuant to W.R.E. 403. First, there is overwhelming evidence in support of the conviction eliminating any possibility that, absent the challenged testimony, an acquittal would have occurred and, further, appellant failed to demonstrate the evidence had little or no probative value and was extremely inflammatory or introduced for the purpose of inflaming the jury. *Hermreck v. State*, 956 P.2d 335, 340 (Wyo. 1998) (quoting *DeWitt v. State*, 917 P.2d 1144, 1148 (Wyo.1996)).

## CONCLUSION

[¶ 13] Appellant failed to establish that plain error was committed in violation of W.R.E. 401 or 403 when evidence of his physical characteristics, consistent with the ongoing use of methamphetamine, was admitted during his trial for possession of methamphetamine.

[¶ 14]   Affirmed.