2007 WY 198

**Eddie Angelo FERNANDEZ, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–07–0120.**

Supreme Court of Wyoming.

Dec. 13, 2007.

Representing Appellant: Diane M. Lozano, Wyoming State Public Defender; Tina N. Kerin, Appellate Counsel; Kirk A. Morgan, Assistant Appellate Counsel. Argument by Mr. Morgan.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Cathleen D. Parker, Senior Assistant Attorney General. Argument by Ms. Parker.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Mr. Eddie Angelo Fernandez appeals the judgment and sentence of the trial court after a jury found him guilty of two counts of aiding and abetting the crime of burglary and one count of conspiracy to commit burglary, contending that the trial court committed judicial misconduct "when it repeatedly instructed defense counsel on time management and created an atmosphere during the trial which negatively impacted [defense counsel's] defense of his client" and "when it interfered with Mr. Fernandez's attorney-client relationship by conducting a hearing, outside the presence of the jury [and after the close of evidence but before closing arguments], on the effectiveness of [defense counsel]." We hold that the trial court did not commit judicial misconduct as contended by Mr. Fernandez and affirm the trial court's judgment and sentence.

### Facts and circumstances of the crimes

[¶ 2] At approximately 4:00 a.m. on July 9, 2006, a woman saw two men stop their car in front of her house and inspect a Cadillac parked there. She called 911. Officers Amend and Kroeger of the Casper Police Department responded to the 911 call. When Officer Amend arrived on scene, she observed that the Cadillac's driver's side door was open, and there was glass on the ground outside of the door. She then shined her spotlight on the Cadillac and saw Mr. Fernandez's leg step out of the door and onto the ground. Officer Amend believed that Mr. Fernandez had been lying in the front seat, as she was not able to see anybody in the Cadillac when she first pulled up to the vehicle. The officer ordered Mr. Fernandez out of the car and began placing him in the back seat of her patrol vehicle with the assistance of Officer Kroeger.

[¶ 3] While placing Mr. Fernandez in the patrol vehicle, the officers heard another person hit a chain-link fence, and Officer Kroeger began to pursue the other subject on foot. However, the officer was unable to apprehend the other subject. During the pursuit, Mr. Fernandez asked Officer Amend whether the other officer had gotten "Zach."

[¶ 4] Inside the Cadillac the officers found a fixed-blade knife. Outside of the Cadillac, on the ground, they found a tire iron, a faceplate from the Cadillac's stereo, and a wallet containing Zach Paul Anderson's driver's license. Inside a white 1991 Pontiac, parked in front of the Cadillac, the officers found the sheath to the knife and the Cadillac's four "spinners." A "spinner" attaches to the wheel cover like a hubcap. The vehicle was registered to Paul Zachary Anderson.

[¶ 5] Officer Seavey transported Mr. Fernandez to the police department. While being transported, Mr. Fernandez informed Officer Seavey that he could show him the location of another auto burglary. Mr. Fernandez told Officer Seavey that he had burglarized another vehicle with a friend. The second location was approximately ten to fifteen blocks, about a mile, from the first location. When Mr. Fernandez located the vehicle, a 1997 Eagle Talon, Officer Seavey observed that the driver's side window was broken out and a stereo appeared to be missing. The owner of the vehicle also reported an IPod, CDs, and headphones were missing from the vehicle.

[¶ 6] Officer Francisco interviewed Mr. Fernandez at the police station, and Mr. Fernandez admitted to removing the "spinners" from the Cadillac. During the interview, Mr. Fernandez gave Officer Francisco inconsistent statements concerning who was driving the Pontiac and why he and his friend were in the area of the Eagle Talon. Mr. Fernandez also informed Officer Francisco where the Eagle Talon's missing stereo could be located. Finally, Mr. Fernandez admitted to Officer Francisco that he had watched his friend bust both vehicle windows.

*Facts relevant to the trial court's time management concern*

[¶ 7] At the start of jury selection on Monday, December 11, 2006, outside of the hearing of the prospective jury, the trial court inquired as to prospective juror Dr. Brown's schedule. The following dialogue occurred:

> The Court: Doctor, as indicated earlier, this will be a two-and perhaps two-and-a-half day trial. And I guess to cut to the chase, is there—do you have patients or medical problems that cause a problem for you serving that period?
>
> Prospective Juror Brown: I'm scheduled to go to Gillette on Wednesday for a clinic, but it—I—it will be tough, but I can do it.

The prosecutor then asked Dr. Brown questions concerning any possible hardship to his patients if he were unable to attend his scheduled clinic. Because Dr. Brown admitted it would be a hardship on his patients to miss the clinic, the prosecutor requested that Dr. Brown be excused from jury service. When questioned by defense counsel, Dr. Brown admitted his burden would be lessened if the trial concluded by Tuesday evening. Defense counsel requested that Dr. Brown not be excused:

> [Defense counsel]: Your Honor, I guess I would—I would see where we are at with it as far as voir dire. I would like to keep Dr. Brown here for voir dire, at least. And then if it appears that we're going to run into a time problem, then I think we—we can deal with that down the road. But at this point, I don't believe that we're going to go beyond those two days.
>
> The Court: Okay. I'm going to take that as kind of a commitment, absent something unforeseen, that we'll conclude Tuesday night for deliberation.

[¶ 8] Later during voir dire, a couple of prospective jurors complained of trials lasting too long and the detriment it caused to their livelihoods. Thereafter, defense counsel specifically inquired of Dr. Brown's time constraints due to his practice:

> [Defense counsel]: And, Dr. Brown, you have a relatively busy practice; is that correct?

> Prospective Juror Brown: That's correct.
>
> [Defense counsel]: Okay. If—if this—because of the questions and because of the case, if this case were to go beyond Tuesday night, would—or into the wee hours of Tuesday, would it cause you—would you feel like you would need to rush to get it done?
>
> Prospective Juror Brown: Perhaps.
>
> * * * *
>
> [Defense counsel]: Would it cause you an undue hardship to sit on this particular jury at this particular time?
>
> Prospective Juror Brown: If it went into Wednesday, it could. That could cause patient problems.

Defense counsel then asked the other prospective jurors whether they would feel pressured to reach a decision if the trial went into Wednesday. One juror expressed concern that Dr. Brown was being favorably treated because he was a doctor:

> Prospective Juror Zenow: I think we all do. We got stuff to do too, you know. You can look at it any way you want. My job is important to me, and I'm important to my company, too. You paid $30 a day, you know; but I feel it is my civic duty to do this. But just because he's a doctor and I'm a mechanic—it doesn't matter what you are.

[¶ 9] Defense counsel then moved the trial court to excuse Dr. Brown for cause, asserting that "in light of what Dr. Brown had told us previously at the bench and what he's answered now, I would ask that—I believe he fits that statutory definition, and I ask he be excused for cause." The trial court responded by asking defense counsel if he was changing his assertion that the trial would be completed by Tuesday:

> The Court: Well, I'm not sure what you're telling me; that you're now telling me the trial won't [be] complete by Tuesday?
>
> [Defense counsel]: That's a possibility, Your Honor.
>
> The Court: Contrary to what you said before and what you told the jury? Counsel, approach please.

Outside the hearing of the jury, the trial court inquired as to defense counsel's change of position. After defense counsel expressed concern that Dr. Brown would be put in a precarious position if the trial ran long, the trial court admonished counsel: "This is exactly the reason I called the doctor up early, out of the presence of the jury. You've now aggravated the jury. I don't understand your conduct, quite frankly, [defense counsel]." During the subsequent hearing on Mr. Fernandez's legal representation, defense counsel admitted that excusing Dr. Brown upset one of the other prospective jurors.

[¶ 10] On this same subject of time management, Mr. Fernandez asserts in his appellate brief:

> Later, [defense counsel] questioned one of the prospective jurors about his schedule. The prospective juror indicated he could rearrange his schedule, "but if it goes longer than three days, I'll be in trouble if I can't go next week." (Tr. Vol.I, p. 61) [Defense counsel] reiterated, "Okay. And I am fairly confident in saying it shouldn't go any longer than three days." (Id.) The Court notified the prospective juror, "you won't—if it goes longer than three days, you won't be the only one in trouble." (Id.)

This assertion suggests that the trial court's comment was uttered during defense counsel's voir dire and revealed the trial court's displeasure with defense counsel. Indeed, earlier in Mr. Fernandez's appellate brief, he states "[t]he trial court created such an atmosphere and detrimentally affected [defense counsel's] representation of his client through inappropriate remarks and its statement that [defense counsel] would be in trouble if the matter exceeded the time indicated." The State's appellate counsel points out, however, that the referenced trial court utterance occurred during the prosecution's voir dire, not defense counsel's:

> Prospective Juror Amend: But if it goes longer than three days, I'll be in trouble if I can't go next week.
>
> [Prosecutor]: Okay. And I am fairly confident in saying it shouldn't go any longer than three days.

> The Court: You won't—it if goes longer than three days, you won't be the only one in trouble.
>
> [Prosecutor]: I can guarantee it won't be the eight like you did in the past.

### Facts relevant to the trial court's hearing to address defense counsel's effective representation

[¶ 11] After the prosecution and defense had rested with respect to the presentation of the evidence but before closing arguments, and outside the presence of the jury, the trial court requested that defense counsel address its concerns regarding his representation of Mr. Fernandez. The trial court expressed concerns about various stages of the trial, including:

1) counsel's knowledge of the requirements of W.R.Cr.P. 24;

2) counsel's aggravation of some of the jurors by seeking to excuse Dr. Brown;

3) counsel's lack of knowledge as to the testimony of the prosecution's witnesses;

4) counsel's lack of discussion of the evidence in his opening statement;

5) counsel's failure to comply with the Case Management Order; and

6) counsel's lack of preparedness for the jury instructions conference.

Defense counsel was allowed to respond to each of the trial court's expressed concerns. Following defense counsel's response, he stated he was comfortable with his work and had no regrets. The trial court then permitted Mr. Fernandez to confer with separate counsel, defense counsel's supervisor. After doing so, Mr. Fernandez informed the trial court he wanted "to proceed forward with [defense counsel]."

## DISCUSSION

[¶ 12] Mr. Fernandez and the State agree that this Court has adopted an abuse of discretion standard in reviewing claims of judicial misconduct. *Belden v. State*, 2003 WY 89, ¶ 9, 73 P.3d 1041, 1049 (Wyo.2003). In *Belden,* this Court explained that its role on appeal is "not to determine whether the trial judge's conduct left something to be

734

desired, or even whether some comments would have been better left unsaid," but whether the judge's behavior was so prejudicial that it denied a defendant a fair trial. *Id.* at ¶ 9, 73 P.3d at 1050 (quoting *United States v. Pisani,* 773 F.2d 397, 402 (2d Cir. 1985)). A conviction should be reversed only upon a showing that the trial court's conduct "so impressed the jury with the trial judge's partiality to the prosecution that this became a factor in determining the defendant's guilt." *Id.* This Court set forth the standard of review analysis as follows:

> The test to determine if a judicial comment in the jury's presence constitutes reversible error is whether the remark was such that it was reasonably calculated to benefit the state or to prejudice the defendant's rights. For comments by the trial judge to constitute reversible error the defendant must show that the remarks were prejudicial and that he or she was harmed thereby.

*Id.* (quoting 75 Am.Jur.2d *Trial* § 309 (1991 & 2001 Supp.)).

█ [¶ 13] Mr. Fernandez scores as inappropriate and prejudicial the trial court's remarks concerning his defense counsel's voir dire of prospective juror Dr. Brown and the trial court's remark during the voir dire of prospective juror Amend that someone would be in trouble if the trial exceeded three days. The State responds that a fair reading of the trial court's remarks does not reflect they were reasonably calculated to benefit the prosecution or to prejudice Mr. Fernandez's right to a fair trial. This Court has carefully read the record and considered the trial court's remarks and does not find that those remarks were calculated either to belittle and disparage defense counsel or to create the impression to the jury that the defense was without merit so as to deprive Mr. Fernandez of a fair and impartial trial. Moreover, with respect to the trial court's remarks attending prospective juror Amend's voir dire, the record is clear, as the State points out, that the comment about someone being in trouble if the trial exceeded three days was not uttered during defense counsel's voir dire and could not reasonably be construed to have been directed at defense counsel.

We hold that the trial court did not err in any of the time management particulars alleged by Mr. Fernandez.

[¶ 14] With respect to the trial court's hearing concerning defense counsel's effective representation, Mr. Fernandez challenges the propriety of such a hearing. He claims the hearing interfered with his attorney-client relationship, but he does not demonstrate that interference. He asserts only that "the implications of this interference *could have* reverberated through [defense counsel's] closing, his argument at sentencing, or during any advice he provided [Mr. Fernandez] after the hearing." (Emphasis supplied.) This bald assertion is insufficient to demonstrate the alleged interference. In response, the State aptly notes that this Court has commended our trial courts' concern about possible claims of ineffective assistance of trial counsel. *Belden,* ¶ 13, 73 P.3d at 1056. We hold that the trial court did not err in conducting the hearing in this case.

[¶ 15] We affirm the judgment and sentence.