GRAY, Justice.
*1284 [¶1] A jury found Melanie Sorensen guilty of possession of methamphetamine, a controlled substance (third or subsequent offense). At trial, the district court advised the jury they might want to wear gloves before examining the proffered evidence of the baggie containing the methamphetamine. Ms. Sorensen appeals from the jury's verdict claiming the district court's remarks on the evidence were error per se or in the alternative plain error, and that there was insufficient evidence to support a guilty verdict. We affirm.
ISSUES
I. Did the district court's comments on the evidence constitute either error per se or in the alternative plain error?
II. Was the evidence sufficient to establish the "knowledge" element of the crime beyond a reasonable doubt?
FACTS
[¶2] On October 15, 2017, dispatch sent Deputy Mark Yocum to a residence in Laramie County after receiving a 911 hang-up call. He arrived at the address at about four in the afternoon and found Ms. Sorensen in a dispute with another resident. While at the residence, Deputy Yocum learned Ms. Sorensen had an outstanding arrest warrant from Carbon County and placed her under arrest. During a cursory search for weapons, Deputy Yocum asked Ms. Sorensen about a tassel hanging off her belt line. Ms. Sorensen explained it was part of her belt. Nothing was said about the pants she wore. Deputy Yocum then delivered Ms. Sorensen to the jail's detention staff.
[¶3] Ms. Sorensen had admitted to using marijuana that day. Consequently, Sergeant Jennifer Stephens conducted a strip search before booking. Sergeant Stephens told Ms. Sorensen to disclose possession of any contraband. Although Ms. Sorensen said she had no contraband, she appeared to be looking for something while she removed her clothing. When Sergeant Stephens asked her if she was looking for something, Ms. Sorensen replied she thought she had twenty dollars somewhere.
[¶4] Sergeant Stephens found a small baggie in the front coin pocket of Ms. Sorensen's jeans. Ms. Sorensen immediately claimed neither the jeans nor the baggie were hers. Sergeant Stephens delivered the baggie to Deputy Yocum for further processing, including analysis by the Wyoming State Crime Laboratory (Crime Lab). The Crime Lab report identified the substance in the baggie as methamphetamine.
[¶5] At trial, defense counsel outlined the defendant's theory of the case in the opening statement:
The issue is not whether or not there was methamphetamine and whether or not it was on her person. The issue is about whether or not [Ms. Sorensen] was knowingly in possession of it. As the State already alluded, the baggy [sic] with the methamphetamine was found in the right front coin pocket of a pair of jeans. That little pocket, you can maybe get one or two fingers in when you put fingers in there. ...
*1285 Miss Sorensen was living in a house with a whole bunch of people that would come and go. ... [S]he [will] say that those weren't her jeans, that she didn't know that there was meth in the jeans. That's all there is to it.
It is not about whether or not there was drugs, not about whether or not it was on her person. It was about whether or not she knew it was there, whether she knew she had it in her possession when she was booked into the jail. That's it.
[¶6] Deputy Yocum, the State's first witness, detailed the circumstances and events surrounding Ms. Sorensen's arrest, including his observation that the only other female present in the house was smaller than Ms. Sorensen. He testified that after he received the baggie from Sergeant Stephens, he sent it to the Crime Lab. The prosecution had Deputy Yocum review the Crime Lab report and then offered it into evidence. It was received without objection and exhibited to the jury. The prosecution then introduced the baggie.
[¶7] After Deputy Yocum identified the baggie found in Ms. Sorensen's pocket, the prosecution requested a sidebar. The prosecutor asked the judge if there was a problem passing the evidence to the jury in the same manner as the report. The judge stated the jurors may have a problem because they may want gloves to handle the evidence. The judge suggested the prosecutor move for admission and then "just hold it and parade [the baggie] up and down before the jury as a way to properly publish it."
[¶8] The baggie was admitted without objection. Prior to publishing this evidence, the court addressed the jury:
Ladies and gentlemen, I would tell you that I usually don't feel comfortable having jurors actually handle a substance like methamphetamine without any gloves. So you will have an opportunity in this case to inspect that in more detail if you would like during deliberations.
What we will probably do if you wish to do that is have you come into the courtroom and have you put on gloves if you want to do that during your deliberations.
The defense raised no objection to the trial judge's statement.
[¶9] The prosecution also called Douglas Kelly, a forensic latent fingerprint expert, who testified Ms. Sorensen's fingerprints were not found on the baggie. Following Mr. Kelly's testimony and while the jury was out of the courtroom, the trial judge noted the defense did not object to the chain of custody and the contents of the lab reports. Defense counsel responded, "Correct, Your Honor. And prior to starting the case [the prosecutor] and I did discuss the case, that we were not going to challenge chain of custody. We were going to stipulate to it as well as the contents of the report [sic] were going to come in." After this short conference, Sergeant Stephens, the last witness for the prosecution, recounted the events during her search of Ms. Sorensen.
[¶10] The defense called two witnesses. The first testified he was the owner of the house where Ms. Sorensen resided at the time of her arrest. On direct examination, he was asked whose pants Ms. Sorensen "ended up wearing on October 15th." He stated he did not know but he "noticed [the pants] were in the bathroom for maybe five days in a row" prior to October 15. On cross-examination, however, he said he could not remember if he saw Ms. Sorensen that day and did not know if the pants in the bathroom were the pants she was wearing when she was arrested.
[¶11] Ms. Sorensen then took the stand. She testified she had put on a skirt the morning of her arrest because she was going to church. However, before breakfast, a guest in the house went to visit the horses and was kicked in the head. During this same time, Ms. Sorensen received a telephone call informing her that her uncle was in the intensive care unit at the hospital. She said, "[S]o at that point with all of the chaos going on, I just wanted to get my things, put it [sic] in a room that locked, and I was going to then go up to the hospital and be with my family." She explained that after she took a shower, she did not put her skirt back on:
Well, because this girl was screaming through the house, arguing with [another resident]. And she was in [Mr. Andreas']
*1286 room. And they're telling her to get out. And I had to get out of the shower and assess the situation. And I figured I should probably have some pants on instead of my skirt. I didn't know exactly what was going to happen. She had kind of threatened me earlier in the day. So I just kind of wanted to be prepared if I needed to have pants on.
Ms. Sorensen stated the pants were not hers and "were kind of big" so she "used the belt that goes to [her] skirt on the pants." She testified she did not know the methamphetamine was in the pocket.
[¶12] The prosecution called Deputy Yocum in rebuttal. The jury was shown a portion of the booking video in which Ms. Sorensen was wearing the pants. Deputy Yocum testified he did not think the pants were ill-fitting and that Ms. Sorensen never said the pants were not hers until after the drugs were found in the pocket.
[¶13] The jury found Ms. Sorensen guilty of possession of methamphetamine and the district court sentenced her to three to five years in prison. She timely appeals.
DISCUSSION
I. Did the district court's comments on the evidence constitute either error per se or in the alternative plain error?
A. Standard of Review
[¶14] In most cases, in the absence of a proper objection at trial, we review a claim of error using the plain error standard. Granzer v. State , 2008 WY 118, ¶ 9, 193 P.3d 266, 269 (Wyo. 2008). Under this standard, Ms. Sorensen "must show a clear and unequivocal rule of law was violated, the violation clearly appears in the record, and it resulted in denial of a substantial right to her material prejudice." Id.
[¶15] Ms. Sorensen contends the trial court's comment regarding the existence of methamphetamine in the baggie was an improper opinion that went to the weight and quality of the evidence. The comment invaded the province of the jury as factfinders and improperly influenced the verdict. She argues this is error per se, requiring a presumption of prejudice under our holdings in Phillips v. State , 597 P.2d 456, 458 (Wyo. 1979), and Sheeley v. State , 991 P.2d 136, 139 (Wyo. 1999).
B. Error Per Se
[¶16] Error per se assumes prejudice to the defendant. In Phillips , we held the prejudicial effect of the trial court's comments denigrating the relevance of the defendant's testimony was not cured by subsequent instruction. "[T]he damage [that has] already [been] done is not capable of being cured." Phillips , 597 P.2d at 459. Twenty years later, in Sheeley , we considered a prosecutor's question prompting testimony about an earlier proceeding presided over by a different judge where that judge warned a witness about perjury. We determined the question not only injected that judge's judicial bias into the current proceedings, but also "required an answer that seemed to address [that] judge's opinion of the credibility of the victim." Sheeley , 991 P.2d at 138. We applied an "error per se" analysis and stated, "[a]ny expression of opinion on the evidence indicating possible bias on the part of the trial judge is prejudicial, as infringing upon the jury's duties." Id . at 139-40. Ms. Sorensen claims the judge's comments in this case, essentially, told the jury that the baggie found on Ms. Sorensen contained methamphetamine-a fact to be resolved by the jury. She contends the district court's comments "indicated a bias in the State's favor" proving the substance was methamphetamine. As a result, she argues the "per se prejudice analysis" from Sheeley should apply.
[¶17] We have retreated from an "error per se" analysis for errors based on judicial and prosecutorial comments in front of the jury. For example, in Large v. State , 2008 WY 22, 177 P.3d 807 (Wyo. 2008), the defendant claimed the prosecutor's questioning at trial improperly elicited an opinion on the defendant's guilt. Previously, we had stated "testimony offering an opinion as to the guilt of the defendant, when elicited by a prosecuting attorney, should be perceived as error per se." Id . ¶ 26, 177 P.3d at 815 (quoting Stephens v. State , 774 P.2d 60, 68 (Wyo. 1989) ). In Large , we recognized "the choice *1287 between the plain error standard and the error per se standard depends upon whether the error is a 'structural' error or a 'trial' error." Large , ¶ 23, 177 P.3d at 814. As the United States Supreme Court has explained:
In Chapman v. California , 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), [the United States Supreme Court] "adopted the general rule that a constitutional error does not automatically require reversal of a conviction." Arizona v. Fulminante , 499 U.S. 279, 306, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) (citing Chapman , supra ). If the government can show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained," the Court held, then the error is deemed harmless and the defendant is not entitled to reversal. Id ., at 24, 87 S. Ct. 824, 17 L. Ed. 2d 705.
The Court recognized, however, that some errors should not be deemed harmless beyond a reasonable doubt. Id ., at 23, n. 8, 87 S. Ct. 824, 17 L. Ed. 2d 705. These errors came to be known as structural errors. See Fulminante , 499 U.S. at 309-310, 111 S. Ct. 1246, 113 L. Ed. 2d 302. The purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial. Thus, the defining feature of a structural error is that it "affect[s] the framework within which the trial proceeds," rather than being "simply an error in the trial process itself." Id ., at 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302. For the same reason, a structural error "def[ies] analysis by harmless error standards." Id ., at 309, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (internal quotation marks omitted).
Weaver v. Massachusetts , --- U.S. ----, ----, 137 S. Ct. 1899, 1907-08, 198 L. Ed. 2d 420, 431 (2017). Using this analysis, we concluded prosecutor-elicited opinions of guilt were a trial error. Therefore, we no longer treat such error as error per se. Large , 177 P.3d at 816 (overruling Stephens).[1]
[¶18] Ms. Sorensen contends there are important factual distinctions between cases controlled by Sheeley and those controlled by Large . She argues a trial judge's comment has a greater effect on a juror than the comments of witnesses or prosecutors. See Beaugureau v. State , 2002 WY 160, ¶ 17, 56 P.3d 626, 635 (Wyo. 2002) ("Of course, the violation is even more serious when the province of the jury is invaded by the opinion of a judge."). Thus, she claims a comment by a judge is inherently more prejudicial and should be viewed under a prejudicial per se standard. We disagree.
[¶19] In Ryan v. State , 988 P.2d 46 (Wyo. 1999) (decided shortly before Sheeley ), the defendant claimed the trial court's statements during voir dire were error per se and required reversal. Id . at 61. There, defense counsel attempted to challenge a potential juror for cause because she admitted she had strong feelings about spousal abuse. Id. In response to the challenge for cause, the trial judge said:
Well, [defense counsel], what I've heard her say is that she is not for spousal or domestic abuse. That is a criminal act. I think if you ask all these people, "Do you have strong feelings about murder," they would probably say, "Yes." That does not disqualify them from serving on this jury. I think it's important they be able to separate, perhaps, the two, that Mr. Ryan is here not because he hit his wife, but because he murdered his wife, and whether or not they have strong feelings about domestic violence or hitting their wives, that isn't going to disqualify them from serving on this jury.
Ryan , 988 P.2d at 61. Defense counsel moved for a mistrial. The judge denied the motion and gave a curative instruction upon returning to the courtroom. The judge clarified he should have said, "He's not here because he's charged with hitting his wife, he's here *1288 because he's charged with having murdered her." Id. (emphasis added). The judge also told the jury he did not mean to imply the court had any opinion as to guilt or innocence, because that "decision [is] for the jury alone." Id.
[¶20] We recognized:
In a trial before a jury, the trial judge must abstain from expressing or indicating, by word, deed, or otherwise, his personal feelings on the weight or quality of the evidence. Comments or expressions of opinion on the evidence which have the tendency to indicate bias on the trial judge's part are regarded as being an infringement on the jury's duties and are prejudicial to the defendant.
Id. (quoting Harris v. State , 933 P.2d 1114, 1118 (Wyo. 1997) (internal citation omitted)). However, applying a plain error standard of review we concluded: "More than a mere misstatement is necessary to show that the trial judge improperly expressed his opinion on the evidence. Moreover, the curative instruction alleviated any possible prejudice to [the defendant]." Ryan , 988 P.2d at 61.
[¶21] We have not applied an error per se standard of review to the statements of the judge during trial proceedings since Sheeley . In Belden v. State , 2003 WY 89, 73 P.3d 1041 (Wyo. 2003), [the defendant] argued the judge engaged in multiple instances of misconduct during the course of the trial, including improper comments on the evidence. Id . ¶ 11, 73 P.3d at 1051. We concluded:
The test to determine if a judicial comment in the jury's presence constitutes reversible error is whether the remark was such that it was reasonably calculated to benefit the state or to prejudice the defendant's rights. For comments by the trial judge to constitute reversible error the defendant must show that the remarks were prejudicial and that he or she was harmed thereby.
Id . ¶ 9, 73 P.3d at 1050 (citation omitted) (applying plain error standard); see also Fernandez v. State , 2007 WY 198, ¶ 12, 172 P.3d 730, 733 (Wyo. 2007) (applying abuse of discretion standard).
[¶22] In Snow v. State , 2009 WY 117, 216 P.3d 505 (Wyo. 2009), we again applied a plain error standard of review when considering whether the trial court's response to a note from the jury usurped its role as the sole finder of fact. During deliberations, the jury sent a note asking: "[D]oes the stalking charge stem from the violations of the protection orders or from actions of following her [?]" Id . ¶ 22, 216 P.3d at 512. The court responded, "The following: violation of protection order, telephone calls and other incidents-the state alleges, all together amount to the 'course of conduct' that constitutes, if you believe they did occur, the ... charge of stalking." Id . ¶ 23, 216 P.3d at 513. We reversed the verdict because "[t]here [was] a reasonable probability that, without the judge's inappropriate evidentiary guidance, the jury would not have reached the verdict that it did." Id . ¶ 35, 216 P.3d at 517.
[¶23] Finally, in Mersereau v. State , 2012 WY 125, 286 P.3d 97 (Wyo. 2012) (abrogated on other grounds by Rodriguez v. State , 2019 WY 25, 435 P.3d 399 (Wyo. 2019) ), the trial court's efforts to explain to the jury the limitations on evidence they were about to hear ran afoul of the line between the roles of judge and jury. Id . ¶ 34, 286 P.3d at 112. Immediately before a law enforcement agent testified regarding his forensic examination of the defendant's computer, the court gave the jury the following instruction:
During the trial pictures of the alleged victim and his brother were allowed into evidence depicting them without their clothes on. I believe you are about to hear evidence that there were child pornography websites on the defendant's computer. This evidence is being admitted for a limited purpose. If you ultimately find beyond a reasonable doubt that the defendant committed one or more of the charged acts, you may consider the evidence pertaining to the naked photographs or the websites for the limited purpose of considering the defendant's motive, intent, knowledge, or presence or absence of mistake.
Id . ¶ 30, 286 P.3d at 111. There was no objection to the court's instruction, and we reviewed for plain error. Id . ¶ 31, 286 P.3d at 111. We found the court's instruction violated a clear and unequivocal rule of law and was *1289 "particularly prejudicial ... considering that the evidence did not, in fact, show that the appellant was visiting child pornography websites on his computer." Id . ¶ 34, 286 P.3d at 112.
[¶24] As these cases illustrate, since Sheeley , we have applied a plain error standard when confronted with a claim of improper judicial comment to the jury without objection at trial. In this case, there is no structural error. No objection was made to the district court's comment, and we apply a plain error standard of review.
C. Plain Error
[¶25] Under plain error, "the appellant must show a clear and unequivocal rule of law was violated, the violation clearly appears in the record, and it resulted in denial of a substantial right to her material prejudice." Granzer , ¶ 9, 193 P.3d at 269. We agree with Ms. Sorensen that the record of the district court's statements is clear. We also agree there is an unequivocal rule of law-"[t]he trial judge is thereby barred from attempting to override or interfere with the juror's independent judgment in a manner contrary to the interests of the accused." Snow , ¶ 31, 216 P.3d at 515 (quoting United States v. Martin Linen Supply Co. , 430 U.S. 564, 573, 97 S. Ct. 1349, 1355, 51 L. Ed. 2d 642 (1977) ). The question here is whether the district court violated this particular rule of law.
[¶26] The district court's comment to the jury pertained to a fact already referenced by both the defense and the prosecution. The defense, in its opening statement, told the jury methamphetamine was found at the jail in the front pocket of the jeans Ms. Sorensen was wearing. According to the defense, the only question was whether Ms. Sorensen knew the methamphetamine was there. Prior to the district court's comments, Deputy Yocum had identified the baggie and testified on the Crime Lab reports stating the baggie contained methamphetamine. The Crime Lab report was admitted without objection. By the time the district court referred to the substance in the baggie as methamphetamine, rather than "alleged" methamphetamine, it was an acknowledged fact which had been submitted to the jury by both parties. The district court's comment did not violate a clear rule of law because no fact was at issue for the jury to decide.
[¶27] However, even if we find the judge's comments were error when made, there is no prejudice here. Ms. Sorensen argues defense counsel's statements in opening argument are irrelevant as there had been no stipulation regarding the nature of the substance in the baggie prior to trial or prior to the district court's remarks that the baggie contained methamphetamine. Therefore, this element of the crime remained a question for the jury to decide. We recognize the argument of counsel is not evidence. See Tanner v. State , 2002 WY 170, ¶ 14, 57 P.3d 1242, 1246 (Wyo. 2002). Here, in addition to defense counsel's opening statement, the defense formally stipulated to the Crime Lab report identifying the contents of the baggie as methamphetamine. This stipulation occurred shortly after the judge recommended the jurors use gloves to inspect the evidence. Moreover, Ms. Sorensen testified a baggie of methamphetamine was found in the pocket of the jeans she was wearing. Any possible prejudice caused by the judge's remark regarding the substance in the baggie was vitiated by Ms. Sorensen's later testimony admitting the baggie found on her person contained methamphetamine. No fact was at issue such that the district court's comments could indicate a bias. The district court's remarks do not constitute plain error which materially prejudiced Ms. Sorensen.
II. Was the evidence sufficient to establish the "knowledge" element of the crime beyond a reasonable doubt?
A. Standard of Review
[¶28] When a defendant raises a claim of insufficiency of the evidence, we review the evidence in the light most favorable to the State to determine whether a reasonable trier of fact may find guilt beyond a reasonable doubt. Schaeffer v. State , 2012 WY 9, ¶ 44, 268 P.3d 1045, 1060 (Wyo. 2012). We accept "as true the State's evidence supporting the verdict" and "do not consider conflicting evidence." Lemley v. State , 2016 WY 65, ¶ 24, 375 P.3d 760, 766 (Wyo. 2016).
*1290 "We will not substitute our judgment for that of the jury [and] our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did." Breazeale v. State , 2011 WY 10, ¶ 13, 245 P.3d 834, 839 (Wyo. 2011) (citations and quotation marks omitted).
B. Sufficiency of the Evidence
[¶29] Ms. Sorensen argues the prosecution failed to introduce any evidence that she knew a baggie containing methamphetamine was in the pocket of the pants she was wearing. Because the prosecution failed to "address the possibility that the pants did not belong to a female" or present "evidence of her pants size in relation to the pants on her," the jury could not have inferred she knew the baggie was there or what it contained.
[¶30] To convict Ms. Sorensen for possession of a controlled substance, the prosecution had to prove beyond a reasonable doubt she knowingly possessed methamphetamine. The court instructed the jury that it must find:
1. On or about the 15th day of October 2017,
2. In Laramie County, Wyoming,
3. The Defendant, Melanie Dawn Sorensen,
4. Knowingly possessed a controlled substance - Methamphetamine.
It further instructed the jury:
"Knowingly" ... does not have a technical meaning under the law separate from its ordinary meaning. The ordinary meaning of "knowingly" is: "With awareness, deliberateness, or intention," as distinguished from inadvertently or involuntarily. Applying the ordinary meanings of the word to the language contained in the statute, if you find the defendant acted with awareness, deliberateness, or intention, then you may find she acted knowingly.
Direct evidence of knowledge is not required. The prosecution may rely on a reasonable inference of knowledge drawn entirely from circumstantial evidence. See Lee v. State , 2003 WY 8, ¶ 10, 61 P.3d 1225, 1228 (Wyo. 2003).
[¶31] A reasonable or permissible inference has been described as "a process of reasoning by which a fact or proposition is deduced fairly and logically from other facts proven or admitted." Grimes v. State , 2013 WY 84, ¶ 11, 304 P.3d 972, 975 (Wyo. 2013) (citations and quotation marks omitted). Here, the jury heard testimony that the pants appeared to fit Ms. Sorensen, and the other female residents of the house were not the same size as Ms. Sorensen. When Ms. Sorensen told Deputy Yocum the belt was hers, she said nothing about the pants belonging to someone else. Sergeant Stephens said Ms. Sorensen appeared to be looking for something during the search and did not say the pants were not hers until after the baggie was found. Ms. Sorensen testified she was anxious to get to the hospital to be with her family that morning, but the arrest did not occur until approximately four in the afternoon. The jury saw first-hand how the pants fit in the video of Ms. Sorensen wearing them during the booking process. We believe a rational jury confronted with these facts could reasonably reject Ms. Sorensen's explanation of events and conclude she knew a baggie of methamphetamine was on her person.
CONCLUSION
[¶32] We analyze the allegations that the district court's statements to the jury constitute reversible error under our familiar plain error standard. Here, the district court did not inject bias into the proceedings or interfere with the jury's fact-finding role. Even if the statements were error, Ms. Sorensen has failed to demonstrate material prejudice to a substantial right, necessary under plain error. The evidence was sufficient for the jury to find Ms. Sorensen knew the baggie was in her pocket and that it contained methamphetamine.
[¶33] Affirmed.

Shortly thereafter, in Granzer , 193 P.3d 266, we considered the court's failure to properly instruct the jury on an element of a crime. Noting our earlier opinions which held this to be a fundamental error, we concluded the error was "not a structural or fundamental error, but rather a trial error" to which "we will not apply an 'error per se' type analysis." Id . ¶ 18, 193 P.3d at 271-72. Applying a plain error standard of review, we determined the defendant was materially prejudiced by the instructional error and was entitled to a new trial. Id . ¶ 18, 193 P.3d at 272.